JAMES H. SAWTELL, RESPONDENT, v. STERN BROTHERS & CO., EMPLOYER; AETNA LIFE INSURANCE COMPANY, APPELLANTS.—44 S. W. (2d) 264.

Kansas City Court of Appeals.    December 7, 1931.

486

*Ryland, Stinson, Mag & Thomson* and *Robert E. Rosenwald* for respondent.

*A. L. Plummer* for appellant.

BOYER, C.—This case arose before the Workmen's Compensation Commission upon the claim of Sawtell, employee, against Stern Brothers & Company, employer, and Aetna Life Insurance Company, the insurer. The full commission, on review of the award of no compensation by one of the commissioners, found in favor of the employer and insurer and against the employee and awarded no compensation. On appeal to the circuit court of Jackson county at Kansas City, said court reversed the award and remanded the cause to the commission with instructions to determine the amount of the compensation to which claimant is entitled under the law. The case is here on appeal from said judgment.

In the language of counsel for the employer and the insurer, "the contention of the appellants is, and has been throughout the proceedings of this case that respondent's accident resulting in personal injuries did not arise out of and in the course of his employment as provided by the Missouri Workmen's Compensation Law, but occurred during a period of time in which he had temporarily abandoned his employment . . . ." The respondent contends to the contrary. The question thus raised is the decisive one in the case as shown by the briefs and arguments.

The answer to the claim for compensation filed by the employer and insurer expressly denies that the injuries to the employee resulted from an accident arising out of and in the course of his employment, and says "on the contrary defendants allege that at the time of the accident said James H. Sawtell was not acting in the course of his employment, he having left his employment for the purpose of visiting his relatives and was returning from his relatives' house at the time the accident occurred and consequently was engaged on his own personal affairs and not on the business of his employer at the time of the accident." All other facts necessary to support the claim are admitted in the answer or upon the hearing before the commissioner.

The case was submitted to the commissioner upon the admissions so made and upon the oral testimony of claimant alone. There was no cross-examination. From the admissions and the testimony the following undisputed facts appear. On the date of the injury, November 30, 1929, James H. Sawtell was an employee of Stern Brothers & Company of Kansas City, Missouri. His work was that of a bond salesman; he had been with the company since 1917. Sawtell lived at Topeka, Kansas, where he maintained a branch office and from which place he would go out over an unrestricted territory in a quest for purchasers of bonds offered for sale by his employer. He had friends, acquaintances, and relatives in Kansas City, Missouri, and pursued the business of his employer at that place and elsewhere. He was acquainted with a Mrs. Wright who lived in Kansas City with her husband, and previous to the date of the injury he had met her at Emporia, Kansas, and out of a conversation between them she became interested in the purchase of certain bonds. Subsequently there was correspondence which led to an arrangement for a meeting between the parties at the office of Stern Brothers & Company in Kansas City. In pursuance thereof, claimant and his wife on the 30th day of November, 1929, came to Kansas City, Missouri, and met Mr. and Mrs. Wright at the office of Stern Brothers & Company for the purpose of discussing the sale of bonds. These four people lunched together that day and the subject of bonds was mentioned at intervals. After lunch the wives of Wright and Sawtell desired to drive around town to see the Christmas decorations and Mr. Wright and Sawtell went to the home of the Wrights where for some time they discussed the bonds in question. It developed that the funds with which the bonds were to be purchased belonged to Mrs. Wright and her husband desired that she hear the discussion. About 4:30 P. M. the men agreed that a further discussion about the sale of the bonds could be resumed when Mrs. Wright returned. It was not known when she would return, but claimant says that he thought perhaps she

would be back about five o'clock. While waiting for the return of Mrs. Wright claimant went to visit his sister and niece who lived in the immediate vicinity and about four and one-half blocks from the Wright residence. The home of the Wrights was "right off Brookside on 56th street" and the home of claimant's sister was "two blocks and a half south and two blocks east." About 5:30 P. M., while claimant was on the return journey from his sister's house to the Wright home, and at 58th and Brookside a little more than two blocks from the Wright home, he was struck down by an automobile in charge of a hit-and-run driver, rendered unconscious, and otherwise injured. A part of claimant's testimony is shown by the following questions and answers:

"Q. At the time you were injured you were returning to the home of the Wrights? A. Yes.

"Q. For what purpose? A. For the purpose of further discussion of the bond sale which was afterwards consummated.

"Q. At the time you left the home of the Wrights to go to the home of your niece, Mrs. Wright had not yet returned to the house? A. No, no.

"Q. And when you left the Wright home, 'you and Mr. Wright agreed that the further discussion about the sale of the bonds could be resumed when Mrs. Wright returned? A. Yes."

Sawtell was receiving from his employer as compensation for his services a fixed salary of $250 a month. In pursuit of claimant's employment he was much in the streets and walking thereon. He testified that at the time he was injured he was engaged in walking on the street intending to further the sale of the bonds which had been discussed. It was his habit and custom to sell and attempt to sell bonds in Kansas City.

In the original award by the commissioner who heard the evidence, it is stated that the finding was in favor of the employer and insurer and against the employee and awarded no compensation "for the reason the employee has failed to prove that the accident arose out of and in the course of his employment." The final award on review affirms the previous award and recites that "attached hereto are the findings of fact and rulings of law made in connection herewith." The findings of fact and rulings of law referred to are set out under the caption "Statement and Rulings of Law," the first part of which is the following:

"On review award dated November 12, 1930, is hereby modified with the following statement of facts and rulings of law. Claimant was a bond salesman with headquarters at Topeka, Kansas. He had no special territory and could sell any place he could find a customer. On or about November 30, 1929, he came to Kansas City, Missouri,

for the purpose of selling bonds to a Mr. and Mrs. Wright. Claimant and his wife and Mr. and Mrs. Wright had lunch together downtown in Kansas City and after lunch Mrs. Wright and Mrs. Sawtell wished to drive around town to see the Christmas decorations and the claimant and Mr. Wright went on out to Mr. Wright's home. They then discussed the matter of bonds for some time, but as the bonds were to be bought with Mrs. Wright's money, Mr. Wright wanted her to hear the discussion. While waiting for them to come the claimant walked about four and one-half blocks to his niece's and sister's for a visit. When returning from their home to Mr. Wright's to finish the discussion in regard to the sale of bonds he was struck by a car and injured.''

The remainder of the designated ''Statement and Rulings of Law'' is an argument in support of the ''opinion'' of the commission that the accident did not arise out of and in the course of the employment.

The circuit court, according to its order and judgment, found: 1. That the facts found by the commission do not support said award, and 2. That there was not sufficient competent evidence in the record to warrant the making of said award, and 3. That the claimant sustained personal injuries arising out of and in the course of his employment. The court then ordered and adjudged that the award of the commission be reversed and the cause remanded as stated above.

### OPINION.

The contending parties agree that the facts are undisputed, and that in such situation the determination of this appeal involves merely a question of law and not a question of fact in determining whether the accident did or did not arise out of and in the course of the employment. It is in effect agreed that the finding of the commission that the accident did not arise out of and in the course of the employment is not such a finding of fact as to be binding and conclusive on the appellate court in this case. Such being the adopted theory we need not give heed to the technical distinction between findings of fact and conclusions of law. However, it has been recently held by the Supreme Court in Leilich v. Chevrolet Motor Company, 40 S. W. (2d) 601, 604:

''That there was an accident, as defined by the act and that it arose out of and in the course of the employment, were findings of fact, and not conclusions of law; they were ultimate facts, and, with the other constitutive facts found or admitted, afforded a sufficient basis under section 3 of the act (section 3301, R. S. 1929) for an award of compensation.''

In the foregoing case it is pointed out that the commission's findings of fact precluded the weighing of evidence on review; that the

findings are in the nature of a special verdict and are binding and conclusive provided only that they are supported by a sufficient amount of competent evidence. In many cases this may be of vital importance, but on the record before us it is of no consequence. If there is no evidence to support a finding of fact made by the commission which is a necessary prerequisite to afford a basis for an award, then the fact so found does not support the award. There was not sufficient competent evidence in the record to warrant the making of the award. Strictly speaking, the question of law involved in this case is this: Does the evidence support the finding of the commission that the accident did not arise out of and in the course of the employment? In the absence of such evidence the award of no compensation was unauthorized and the judgment of the circuit court was right.

Appellants insist that the accident to claimant did not arise out of and in the course of his employment "because the accident occurred during a period of time in which he had temporarily abandoned his employment, stepped aside, deviated and digressed therefrom, for the purpose of performing an act of a purely personal and social character, solely for his own convenience and personal pleasure, without the knowledge of the appellants—and not for the appellants' benefit." Numerous authorities are cited which are said to support the contention made. We have examined all of them and find that they are either inapplicable or not controlling under the state of the record with which we are dealing. It is insisted that the case of Bise v. Tarlton et al., 35 S. W. (2d) 993, is exactly in point. The facts and the issues clearly distinguish the case. The claimant in that case was a night watchman whose duties were required to be performed at a definite and specified place. He left his place of work and the evidence is conflicting as to just where he went and what he did. Claimant's testimony was contradicted by a showing of admissions as well as by that of various witnesses. While crossing a street he was struck by an automobile and injured. The Commission found that the accident did not arise out of and in the course of his employment and the court held as follows:

"Where the facts are in dispute, as here, the finding of the commission that the accident did not arise out of and in the course of claimant's employment is a finding of fact, conclusive and binding on appeal if there is substantial evidence to support it, and has the force and effect of a verdict of a jury."

Other cases where the work of the employee has a fixed and definite situs are not authority for appellants' contention that the claimant in the instant case and abandoned his employment. The movements, conduct, and actions of the claimant in this case in promoting the

business of his employer were unconfined. He was free from the restraint that attends an employee in an office, shop, factory, store or other establishment. His activity covered a wide field, and there is no evidence that he was not entirely at liberty to employ his time and efforts in soliciting customers in the manner in which his judgment would dictate. Discretion would determine the matter of his physical presence at any given time and place.

It is conceded by appellants that the claimant had been continuously engage in his employment from the time he left his home at Topeka, up to the very moment that he left the Wright home to visit his relatives, but they strenuously insist that when claimant left the Wright home to visit his sister that he then and there abandoned his employment and that he could not have been in the course of his employment thereafter until he again reached the Wright home to resume the discussion of business.

We cannot allow the contention without wholly disregarding the particular circumstances in which claimant was placed and the problem with which he was confronted at the time he left the Wright home. He was there intent upon business and was diligently and faithfully endeavoring to perform the work of his employer. The discussion of the sale of bonds had progressed to the point where Mr. Wright did not care to consider the subject further until his wife, who was the prospective purchaser, arrived home and could hear the discussion. The exact time of her arrival was unknown. It was then four-thirty o'clock and he and Mr. Wright had been together since noon. It was appropriate to suspend discussion and establish contact upon the return of Mrs. Wright. The time of her expected arrival was indefinite, but claimant thought possibly she would be there about five o'clock. His sister lived nearby and he did the natural and reasonable thing when he decided to visit her during a period of necessary delay. When he left the Wright home it was with the intention aid express understanding of both himself and Mr. Wright that he would return and that they would resume their business discussion when Mrs. Wright reached home. About one hour after claimant left the Wright home he was on his return thereto, intent upon the business which he had in hand for the day, and was injured within about two blocks of the Wright residence. Under the circumstances we do not deem that he abandoned his employment at any time. He was apparently doing all that he could do appropriately in view of Mr. Wright's suggestion that the further discussion be discontinued until Mrs. Wright's return. To remain in the course of his employment claimant was not required to impose his presence continuously in the house of his prospective customer, nor was he required to sit upon the doorstep or to remain upon the premises as

though haunting the trail of a customer, and under the circumstances it was very likely more prudent that he temporarily absent himself. He was confronted by a necessary interval of suspended personal contact with a prospective customer, and if he adopted a reasonable and prudent course to re-establish contact his employment was neither suspended nor abandoned. He was not laboring with his hands but he was called upon to exercise all of his faculties as a salesman, and especially employ his mind upon means and methods of promoting his employer's business. This he could do while absent from the Wright home. There was a suspension of actual contact and personal discussion with a prospective purchaser, but we think that the reasonable and just view of the situation is to hold that the continuity of his employment remained unbroken until the time of his injury. His work did not cease. It involved the discovery of a likely customer, a proper method of approach, personal contact at a time and place suitable to the convenience of the purchaser, and an orderly and effective method of presenting the merits of the bonds. His employment called primarily for the use of his mental faculties. His bodily movements, physical presence and exertion at any given time would be regulated by an intelligent conception of the proprieties, and characterized by the use of judgment and discretion. He was using his intellect in his employer's business in determining what course he should pursue until such a time as the prospective customer would likely arrive home and afford him an opportunity to resume the suspended conversation. Under the circumstances, there was no deviation from the work or the performance of any duty which he owed his employer, and if the visit could properly be designated a deviation it was merely incidental and claimant remained in the course of his employment.

In the case of Metting v. Lehr Construction Company, 32 S. W. (2d) 121, 125, which involved a claim for death, this court observed in reference to the conduct of the employee as follows:

"Under all of the circumstances it was an act that the defendant reasonably might have anticipated deceased would do and was not wholly beyond or disconnected with his employment. 'It has been said that an injury which occurs while the employee is doing what he might reasonably do at the time and place is one which arises out of and in the course of the employment. [1 Schneider on Workmen's Compensation Law, p. 502.]' "

Section 3301, Revised Statutes 1929, provides compensation for personal injury of an employee by an accident "arising out of and in the course of his employment." There has been much judicial effort expended in an attempt to define the quoted words and numerous cases are available wherein the meaning of the words "out of"

and "in the course of" has been technically explained and applied and definitions offered and adopted to meet the issues of the cases held in judgment. Pertinent to this subject, however, we note in a very recent case, Leilich v. Chevrolet Motor Company (Mo. Sup.), 40 S. W. (2d) 601, the following:

"Since the adoption of workmen's compensation acts, in England and then in this country, there have been many definitions of the phrase "arising out of . . . his employment" essayed by the courts. Some of these definitions, framed by eminent courts in view of the facts of the particular cases before them, have been repeated so often by other eminent courts that they have become formulae, in some one of which, it is thought, the facts of every case must conform in order for compensation to be allowable therein. [Wahlig v. Grocer Co. (Mo. Sup.), 29 S. W. (2d) 128; Cassidy v. Eternit (Mo. Sup.), 32 S. W. (2d) 75; Jackson v. Investment Co., supra.] There is no justification for investing the words "arising out of . . . his employment" with a technical meaning; they are plain, ordinary, and everyday words, and should therefore be given their plain, usual, and ordinary meaning. Every case involving their application should be decided upon its own particular facts and circumstances and not by reference to some formula."

In addition to the cases cited in the quotation above, many others may be noted, some of which are: Smith v. Levis-Zokoski Mercantile Co. et al., 14 S. W. (2d) 470; Hager v. Pulitzer Pub. Co. et al., 17 S. W. (2d) 578; Howes v. Stark Bros. Nurseries & Orchards Co. et al., 223 Mo. App. 793, 22 S. W. (2d) 839; Conklin v. Kansas City Public Service Co., 41 S. W. (2d) 608; Metting v. Lehr Construction Co., 32 S. W. (2d) 121.

We deduce from the opinion in the Leilich case, supra, that while definition may be useful for purposes of exposition in a given case they are not meant to be wholly inclusive and final for all cases, nor to exclude a case where the facts do not exactly conform to the definitions given; and when we are called upon to interpret and apply the words "arising out of and in the course of employment" these words are regarded as coming into the case divested of any technical significance which might appear to have been attached through definitions offered in other cases involving different facts, and the more significant and controlling idea is that "every case involving their application should be decided upon its own particular facts and circumstances and not by reference to some formula."

Manifestly the Legislature never intended any mystery or magic to be involved in the words "arising out of" or "in the course of" employment, but intended that in their application they should be given

494

their plain, usual, and ordinary meaning without reference to any strict or technical significance, and that regard must be had to the specific facts and circumstances attending each individual case. The Workmen's Compensation Act must be fairly, reasonably, and liberally construed in order to effectuate the legislative intent to afford compensation to an injured employee rather than strictly and technically construed in order to deny compensation.

In view of the undisputed evidence, and in view of the nature and character of the employment in which claimant was engaged, and the motives, purposes, and intent which at the time controlled his conduct, we have no hesitancy or difficulty in arriving at the conclusion and holding, as we now hold, that the accident to claimant and the resulting injury arose out of and in the course of his employment. We further find and hold that there was no evidence to the contrary, and that the finding of the commission that the accident did not so arise is unsupported by any evidence, and consequently there was no basis for the award made by the commission in which compensation was denied. The judgment of the circuit court should be affirmed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.