MRS. LAURA McCoy, Claimant, v. H. G. SIMPSON, Doing Business as SIMPSON OIL COMPANY, Employer, HARDWARE MUTUAL CASUALTY COMPANY, Insurer, Appellants.—139 S. W. (2d) 950.

Division One, May 7, 1940.*

*Oliver & Oliver* for appellants.

---

*NOTE: Opinion filed at September Term, 1939, March 6, 1940; motion for rehearing filed; motion overruled at May Term, 1940, May 7, 1940.

*Blanton & Montgomery* for claimant, respondent.

CLARK, J.—Appeal by the employer and insurer from a judgment of the circuit court of Dunklin County affirming a final award made by the Workmen's Compensation .Commission to the dependent widow of Ruskin G. (Pete) McCoy. The award is for $20 per week for 450 weeks (or until prior death or re-marriage of claimant) and for $80 medical aid and $150 burial expense; all payments to begin as of November 24, 1935. The death of McCoy resulted from an automobile collision on a public highway near Kennett, Missouri, on said date.

The sole question here is whether the award is supported by sufficient competent evidence to show that the accident from which McCoy's death resulted arose out of and in the course of his employment.

He was employed by the Simpson Oil Company, whose business was and is the sale of gasoline, motor oil and tires at wholesale and whose main office is at Charleston, Missouri. McCoy's home was at Sikeston, Missouri. He was a traveling salesman and sales supervisor for the company over nineteen counties in the southeastern part of the state. His duties were to sell the products of the company, work with its agents, promote sales, obtain leases for oil stations, and contracts for the handling of his employer's products, collect accounts, etc. He was paid a salary and the company furnished and maintained an automobile for his use. He had no regular hours of work and it was not unusual for him to devote time to the company's business until late hours at night and some times on Sundays. The general manager of the company testified that he had worked with McCoy as late as 1:30 in the morning and on Sunday.

On the afternoon of November 23, 1935, McCoy was directed to go to Kennett to supervise an advertising stunt for his company. This stunt consisted in throwing a number of turkeys from the roof of a building, each turkey having a slip of paper attached to it authorizing the person catching it to obtain some product or service from the oil company. McCoy arrived in Kennett about four P. M. while the

stunt was in progress. He purchased one of the turkeys from a man who had caught it and placed it in the back of the company car he was driving. Shortly after midnight of the same day he met his death by driving the car into the rear of another automobile on Highway No. 84 a short distance from Kennett and on the usual route between Kennett and Sikeston. In the car with McCoy at the time of the fatal collision was a man by the name of Sam Graham whose home was at Sikeston. Also in the car was found the turkey which McCoy had purchased and samples of oil and gasoline and papers belonging to the oil company.

Appellants concede that McCoy transacted some company business and remained at Kennett until late in the afternoon, but contend that he then returned to Sikeston, a distance of seventy miles, and the same evening drove back to Kennett, taking Sam Graham with him. Appellants further contend that when McCoy returned to Sikeston he completed the mission on which he had been engaged for his employer, and that the second trip to Kennett was on a mission of his own, to-wit, a pleasure trip. Appellants base their contention that McCoy drove to Sikeston and returned to Kennett upon the testimony of two of their witnesses, Sam Graham and his mother, Mrs Nannie Graham.

Mrs. Nannie Graham testified that on November 23 McCoy came to her house in Sikeston and inquired for her son Sam; that this was shortly after supper—after six o'clock; again she said it was about seven P. M. She told McCoy that her son had gone to a beauty shop which he operated in Sikeston.

Sam Graham testified that McCoy came to his shop around seven P. M. and requested witness to accompany him back to Kennett; that witness rode to Kennett in the car with McCoy and remained with him until McCoy met his death shortly after midnight on the road back to Sikeston; that on the trip from Sikeston to Kennett McCoy stopped at several filling stations, but witness could not say whether he transacted any business; Graham received injuries in the collision which caused McCoy's death and settled with the Simpson Oil Company or some insurance company for the injuries so received.

Other witnesses for appellants testified as to McCoy's presence at Kennett on November 23rd as follows: *V. M. Derossitt* saw him at the filling station operated by witness about 5:20 P. M. and ordered some tires which McCoy said he would deliver that night or by noon the next day; the tires were not delivered. *Guy Hartley* saw McCoy at a pool hall between five and seven P. M.; this was just before witness got off work at seven P. M.; McCoy said he was tired and was going home. *M. W. Lloyd* was with McCoy from about five-thirty until a few minutes after six at a liquor store. *Clay Hartley* sold McCoy a half pint of liquor around eleven, between eleven and twelve P. M. *Mary Frye* saw McCoy at Clyde Lunsford's place and was

with him from about nine P. M., until eleven-thirty or later; that she, Juanita Christie and Leatha Wilson drank liquor and danced with McCoy, Sam Graham and another man; that McCoy was not drunk. *Leatha Wilson* saw McCoy around five P. M. and again at Lunsford's place between eight-thirty and nine; drank and danced with him and others; McCoy was not drunk; he took her home around ten-thirty or eleven or maybe later. *Juanita Christie* saw McCoy between four-thirty and five for about thirty minutes; next saw him around eight or nine at Lunsford's place with Sam Graham; she drank and danced with them and others; all got pretty ''tight''; were there from nine to eleven-thirty or close to twelve; on cross-examination witness said she remembered making a previous statement that she saw McCoy about six-thirty or seven.

Respondent's witnesses testified to McCoy's presence at Kennett on the day in question. *Albert Miles* worked for a filling station and restaurant (presumably Lunsford's); McCoy was there from around seven until about eleven; he talked to witness about procuring a station for witness to operate; *Clyde Lunsford* saw McCoy at his place alone about six P. M.; then from eight to about eleven with Graham and others; they were drinking, but McCoy was not drunk; heard him talk to Albert Miles about getting a filling station for Miles; McCoy told witness that he was supposed to be home by six o'clock, but ''I met up with this fellow here and here I am;'' Graham was then with him.

█ Appellants cite a number of cases on the contention that the burden is on the respondent to show with reasonable probability that the injuries that caused McCoy's death ''rose out of and in the course of his employment'' and that the award of compensation cannot be based on guess, speculation, etc. It is unnecessary to review such cases. They correctly rule the law and the point is not disputed by respondent.

Appellants conceded that, where an employee is found injured at a place where his duties require him to be, a presumption arises that he was injured in the course of his employment, but say that such presumption is rebuttable. We agree that such is well settled law and the case cited by appellants so hold.

█ It is equally well settled, as held in many cases cited by respondent, that the Compensation Commission, as the triers of the facts, are the sole judges of the credibility of the witnesses and the weight to be given their testimony; and that courts will sustain the Commission's finding if it is supported by competent and substantial evidence.

█ In our view, the question in this case may be reduced to this: Is their sufficient competent evidence in the record to prove with reasonable probability that McCoy remained at Kennett from the time he went there on company business in the afternoon until

he began his fatal journey to his home? If the evidence is sufficient in that respect, although he delayed his departure for several hours after completing his business, when he did start for home he again resumed the duties of his employment. [Beem v. H. D. Lee Merc. Co., 337 Mo. 114, 85 S. W. (2d) 441; Sawtell v. Stern Bros., 226 Mo. App. 485, 44 S. W. (2d) 264; Schulte v. Grand Union Co. (Mo. App.), 43 S. W. (2d) 832; Brunk v. Hamilton-Brown Co., 334 Mo. 517, 66 S. W. (2d) 903.]

Appellants say that the testimony of the Grahams, to the effect that McCoy returned to Sikeston and again went to Kennett on a pleasure trip, is unimpeached and uncontradicted; that the Commission could not legally ignore that evidence and it is binding upon the Commission and the court. But, while the Commission can not *disregard* competent substantial testimony, it is not compelled to accept it as true. [State ex rel. v. Trimble, 307 Mo. 536, 271 S. W. 43; Bank of Slater v. Harrington, 218 Mo. App. 645, 266 S. W. 496; Dempsey v. Horton, 337 Mo. 379, 84 S. W. (2d) 621, 624; Sanders v. Central Building Co. (Mo. App.), 43 S. W. (2d) 863.]

We think the testimony of the Grahams is contradicted by competent and substantial evidence which authorized the Commission to believe that McCoy remained at Kennett. The witnesses testified to his presence there, as follows: Derossitt, Hartley, Lunsford, Leatha Wilson, Juanita Christie, at various times between five and six P. M.; Lloyd, from five-thirty until after six; Miles from seven to eleven, and many witnesses from about eight or nine to nearly midnight. True, these witnesses did not attempt to fix the exact time, but some of them gave reasons for their estimate. The Commission knew, and so do we, that it would require two hours of fast driving to travel the 140 miles from Kennett to Sikeston and back to Kennett, without allowing any time for stay at Sikeston. The Grahams fixed McCoy's arrival at Sikeston at about seven P. M. and indicated that some little time was spent there. Sam Graham said that several stops were made on the way to Kennett.

There was substantial competent testimony to support the Commission's award. [Phillips v. Air Reduction Co., 337 Mo. 587, 85 S. W. (2d) 551; Wahlig v. Krenning-Schlapp Co. 325 Mo. 677, 29 S. W. (2d) 128; Zimmerman v. Goodfellow Co. (Mo. App.), 56 S. W. (2d) 608; Tralle v. Chevrolet Co., 230 Mo. App. 535, 92 S. W. (2d) 966.]

On the question of sufficiency of the evidence appellants cite: Duggan v. Toombs-Fay Co., 228 Mo. App. 61, 66 S. W. (2d) 973; Mullally v. Langenberg Co., 339 Mo. 582, 98 S. W. (2d) 645, and McMain v. Connor & Sons Co., 337 Mo. 40, 85 S. W. (2d) 43. In each of those cases the facts differ from those in the instant case.

In the Mullally and McMain cases the injuries were sustained while the claimants were on missions of their own. In the Duggan case the claimant was injured while on a roundabout trip to his home after transacting business for his employer. In the instant case McCoy was injured while on the usual route to his home from which he had been sent on his employer's business.

Appellants complain of the admission in evidence of certain statements made by McCoy. Appellants also introduced some statements of McCoy. All these statements were made before the accident and McCoy died before the hearing. It is unnecessary to pass upon this complaint. Omitting these statements entirely there remains sufficient competent evidence to support the award of the Commission and the judgment of the trial court.

The judgment should be and is hereby affirmed. All concur.