FRANK THURBER, RESPONDENT, v. ALLIED MOTORS COMPANY AND AMERICAN MOTORISTS INS. CO., APPELLANTS.—150 S. W. (2d) 1109.

Kansas City Court of Appeals. April 7, 1941.

1192

*Paul C. Sprinkle, Simrall & Simrall, Lawson & Hale* and *Sprinkle & Knowles* for appellants.

*Lancic L. Watts* for respondent.

CAVE, J.—This is an appeal from an award by the Workmen's Compensation Commission in favor of respondent, Frank Thurber, which award was heard and sustained by the Circuit Court of Clay County. The claim is the result of an accident which occurred on March 26, 1939, in Clay County. There is no controversy concerning the time of the filing of the claim or as to the amount of the award, if the claimant is entitled to recover anything.

The sole question presented for our decision can best be stated in the language of appellants:

"The Workmen's Compensation Commission erred in awarding claimant compensation because there was not sufficient competent evidence in the record to warrant the making of the award in that there was no competent evidence that the claimant at the time that he was injured was in the course of his employment nor did his injuries arise out of his employment."

The same objection is made to the circuit court judgment affirming the award of the commission.

The claim is in usual form and the pertinent part of appellants' answer is:

"Now comes Allied Motors Co., the alleged employer herein, and specifically denies that the claimant was in the course of his employment at the time of the alleged accident and specifically denies that the claimant's injuries or the accident arose out of any accident which occurred during the business or employment of this claimant; that the alleged employer understands that the claimant sustained injuries as a result of an accident in Clay County on a Sunday afternoon when he was on no business for this alleged employer and not following any directions of this alleged employer and at said time was not acting in the course of his employment, but in truth and in fact said claimant had, without permission of this alleged employer,

taken an automobile belonging to this alleged employer for a distance of approximately 90 miles from Kansas City upon business and pleasure purely of the claimant, . . .''

The cause was heard before one of the commissioners who made an award favorable to the respondent and under the heading of ''Additional Findings of Fact and Rulings of Law,'' the commissioner, among other things, found:

''I find from the evidence that the employee sustained an accidental injury on March 26, 1939, which arose out of and in the course of his employment; . . .''

A review by the whole commission was had, and the whole commission made the same finding, and based its award thereon. Thereafter, an appeal was taken to the Circuit Court of Clay County, and the award was affirmed by that court and the cause was appealed to this court.

The evidence disclosed that the respondent lived in Kansas City, and that the Allied Motors Company had one or more places in Kansas City where its second-hand automobiles were kept, and such place is referred to as the ''used car lot.'' The respondent testified concerning his employment in substance as follows:

''He (referring to the agent who employed him) asked me why I did not come down and go to work with him, because I had worked with him before several years previous, and I about promised him, I did not promise him for sure, but I told him I would think it over very seriously and about a week later I was back by there and he said ''Are you going to work?'' and I said ''I believe I will,'' and he said ''All right, take your hat off and go in there on the floor, I will furnish you a car and gasoline and give you six per cent commission on your cash sales you bring in.'' That was about all he said at that time.

.   .   .   .   .   .

''Q. Was anything said by him at that time as to what would constitute your territory? A. No, sir, there was no territory, no.

''Q. What arrangements were made for furnishing you a demonstration automobile? A. He told me to go out to the lot there and pick me out one, one I wanted to use.

''Q. Did you do that? A. Yes, sir.

.   .   .   .   .

''Q. Did you continue to use a car that is that you selected from that time until March 26? A. No, I used the car then for about a week and then I got another one.

''Q. What was selected in about a week after you were employed, what kind of car? A. '36 Chrysler sedan.

''Q. Was that the one that you were driving at the time of the collision? A. Yes, sir.

"Q. Had you been driving that car day and night from the time that you had selected it until the collision? A. Yes, sir.

"Q. Take it home at night and keep it? A. Yes, sir.

"Q. And bring it back the next day? A. Yes, sir.

"Q. That was then every day and Sunday? A. Yes sir.

"Q. What were your working days? A. Every day.

"Q. Including Sunday? A. Including Sunday.

"Q. Did you work at nights? A. Yes, sir.

"Q. Did you demonstrate automobiles at night? A. Oh, yes, very often.

"Q. Was there anything said to you by Mr. Stevens at the time you were employed or at any time subsequently about not demonstrating cars beyond the corporate limits of Kansas City or for that matter any other place? A. No, sir, never was anything said.

"Q. As a matter of fact, during the two or three months employment there, did you make trips to other cities surrounding Kansas City? A. Yes, sir.

"Q. Tell the Court the different places you went during that period of time? A. I was to Olathe two times and I was at Cameron once or twice, I know I was there once. I was at Harrisonville once and I was at Excelsior Springs once.

"Q. Any place else? A. I believe, yes, Liberty, I went to Liberty once.

"Q. Any place else? A. I believe that is all I can remember.

"Q. Now, then, did you before going on those trips, say anything to Mr. Stevens or to anyone else connected with the company as to your intention to go to those cities? A. No, sir, I can't remember if I did.

"Q. After you came back from those towns, did you at times tell Mr. Stevens that you had been to those places to demonstrate automobiles or to see customers? A. I just remember telling him one time when I came back from Cameron with a LaSalle sedan.

"Q. Had you driven the LaSalle sedan there? A. Yes.

"Q. Had you obtained any permission to drive the LaSalle up there before you left? A. No, sir.

"Q. When you came back tell the Commission the conversation you had with Mr. Stevens. A. Well, I was a little late getting back. He wanted to know where I had been and I told him I had went to Cameron on a deal up there on a LaSalle, and he said I should have driven a lighter car and shouldn't have taken that car, a little too heavy to drive up there, and I told him that is the car I wanted to deal up there, and that is all that was said.

"Q. Did he make any complaint or criticism of you for having taken that automobile to Cameron to see the customer? A. Only that I should have taken a lighter car.

"Q. Other than that did he make any criticism? A. No, sir.

"Q. Did he at that time or at any other time tell you you shouldn't take and demonstrate a car of the company outside of the limits of Kansas City without first obtaining permission of the company? A. Never did mention that to me at all, no, sir.

"Q. What is the arrangement you had with the employer with reference to the gasoline that was to be used in this demonstrating car and any other car that you were to show to customers? A. Well, three gallons a day in your demonstrator car, and depend on how far you was going, or any car you took out, you got another two or three or four gallons, whatever you thought you needed, a car you was going to make a deal for.

"Q. So that each day you had a right to requisition three gallons for your own demonstrating car? A. That is right.

"Q. And if you took an additional car out, you had the right to get additional gas, is that correct? A. That is correct."

There was evidence that the employer wrote letters to out of town prospects and signed names of their salesmen thereto; and that sales or trades made by the salesmen with out of town customers were accepted and completed by the employer. At the beginning of the hearing, this admission was made by the appellants:

The Commissioner: "It is admitted that on or about March 26, 1939, that Frank Thurber was an employee of the Allied Motors Company and was working under the provisions of the Missouri Workmen's Compensation Law?"

The Appellants: "Yes, sir."

The evidence is conflicting as to whether respondent's territory was restricted to Greater Kansas City or was unlimited, but we cannot pass on that conflicting testimony because the finding of the commission is binding on appeal.

On the day in question, March 26, 1939, which was on Sunday, the respondent had worked in the used car lot until about five o'clock in the afternoon, when he decided to drive the car furnished him by the employer to Pattonsburg, Missouri, with the intent of contracting certain prospective customers. By the terms of his employment, he was to be furnished an automobile by the company and three or more gallons of gasoline per day to be used in contacting prospective customers. On this day, he took the car which had been assigned him, got three gallons of gasoline at the expense of the company, and drove by his home in Kansas City, where his wife joined him, and they drove to his brother's home, near Pattonsburg, and discussed with his brother the trading of automobiles. He then went to Pattonsburg and there interviewed three or four persons concerning the prospect of automobile trades, none of which were consummated. When he left Pattonsburg, he intended to return directly to his home in Kansas City, and while on the return trip, the accident occurred. The cause of the accident and the amount of the award are not questioned,

and will not be dealt with here in detail. The respondent admitted that he did not tell his superior, or any one else, about his intention of going to Pattonsburg.

It is now elementary law in this State that the award of the Compensation Commission is binding on the appellate court, if the award is supported by any substantial competent evidence. [Allen v. Savings & Loan Association, 232 Mo. App. 1098, 115 S. W. (2d) 7; Wills v. Delivery Company, 134 S. W. (2d) 125.]

It is admitted by the employer that the respondent was an employee at the time of the accident. Also, that the employer was to furnish the employee an automobile and a certain amount of gasoline to be used in contacting prospective customers. Respondent was to be paid a commission on his sales. He testifies there were no instructions given or restrictions made concerning the territory in which he was to work. The employer denies this, but that is not material on the question now before us.

The evidence is that the employee drove to Pattonsburg, Missouri, in the car furnished him by this employer, and there contacted three or four persons and discussed with them the sale or trade of automobiles. On his return trip home, he was involved in an accident while driving the employer's car and was injured.

The finding of the Workmen's Compensation Commission, that accident arose out of and in course of employment, is finding of fact which is conclusive on circuit and appellate courts, as would be verdict of jury if supported by any substantial and competent evidence. [Reed v. Sensenbaugh et al., 86 S. W. (2d) 388; Melvin v. Harrison Engineering Company, 107 S. W. (2d) 836.]

Appellants rely on certain cases to support their contention that there is no substantial evidence in the record to support the commission's finding that respondent's injuries arose out of and in the course of his employment. Such cases are: Riggs v. Higgins et al., 341 Mo. 1, 106 S. W. (2d) 1; Barnes v. Real Silk Hosiery Mills et al., 341 Mo. 563, 108 S. W. (2d) 58; Vert v. Metropolitan Life Insurance Company, 342 Mo. 629, 117 S. W. (2d) 252. None of those cases were compensation cases and did not come under the Workmen's Compensation statutes which are involved in this case. The cases cited and relied on dealt with the question of liability of employers to third persons for negligence of insurance agents under certain facts in each particular case. The court was ruling on the question of the agency of the employee at the particular time of the accident, and whether the employer had the right to control or direct his actions at that time; while in the case at bar, it is admitted that the respondent was an employee at the time of the accident, but the employer seeks to escape liability under the Compensation Law by contending that at the particular time of the accident, the employee was not acting in the course of his employment, but was on a personal pleasure

trip. Evidence was introduced by the employer to sustain such claim, but as we have said, if there was sufficient competent evidence to support the finding of the commission, we are bound thereby.

We think the facts in this case are different from the facts in the above cited cases. Here the employer furnished the employee one of its automobiles and supplied the gasoline and upkeep thereof, and encouraged him to go out and find customers. In fact, that was the only method by which he could earn money, because he was only paid a commission on his sales or trades. Furthermore, it appears from the above cited cases that the employee had gone beyond the limits of his designated territory or duties, while in the instant case, the evidence is conflicting on that issue. Also, it appeared in the above cited cases that the employee furnished his own automobile and the upkeep thereof, while the contrary appeared from the record in this case. We do not believe the cases relied on by appellants are controlling under the facts in this case. [Sawtell v. Stern Brothers & Company, 226 Mo. App. 485, 44 S. W. (2d) 264.]

Able counsel for the appellants argue that the mere fact that the employee was driving an automobile belonging to the Motor Company, carrying a dealer's license plate, would not raise a presumption that the salesman was in the course of his employment in the face of testimony to the contrary. That, no doubt, is true, but it does appear from the record in this case that it was the duty of the employee to make trips away from the "sale lot" in order to secure business; that he and other salesmen had done so in the past, therefore there was no need for the claimant to rely on a mere presumption. Appellants also contend that on this particular trip the employee did not secure the consent of the employer to make it. Under the facts appearing in this record, we do not believe it is necessary for the employee to secure such consent before leaving on the trip, if he was going, as he says he was, on business for the employer.

After careful consideration of the record and the cases relied on by appellants, we are forced to the conclusion that there is sufficient competent evidence in this case to support the finding of the Commission that the employee sustained an accidental injury arising out of and in the course of his employment, and that the circuit court properly affirmed the award of the commission. It follows, therefore, that the award of the commission and the judgment of the circuit court are affirmed. All concur.