CLARA SCHARLOTT, Widow of ALFRED V. SCHARLOTT, Deceased, Employee, v. NEW EMPIRE BOTTLING COMPANY, Employer, and THE OCEAN ACCIDENT AND GUARANTEE CORPORATION, Insurer, Appellants.—No. 39469.—192 S. W. (2d) 853.

Division Two, February 11, 1946.

Rehearing Denied, March 11, 1946.

*Joseph N. Hassett* and *Ernest E. Baker* for appellants.

*Hay & Flanagan* and *H. O. Piening* for respondents.

 WESTHUES, C.—The following is a statement of this case as found in appellants' brief:

"This appeal grows out of a claim for compensation filed before the Missouri Workmen's Compensation Commission by Clara Schar-lott, widow of Alfred V. Scharlott, deceased, seeking an award of compensation on account of the death of her husband. The Missouri Workmen's Compensation Commission made an award in the sum of $8,350.00, and on appeal to the Circuit Court of the City of St. Louis, the award of the Missouri Workmen's Compensation Commission was affirmed.

"Claimant's husband, Alfred V. Scharlott, was employed by the employer as a driver-salesman, delivering and selling cases of soda water to retail trade at the time of his injury and death, on July 16th, 1943. The driver-salesmen were permitted by the employer to obtain the services of a helper on their trucks, if they so desired. These helpers were paid by the driver-salesmen and were under the control of the driver-salesmen, and were not paid by the employer and were not under the control of the employer.

"On the date in question, Alfred V. Scharlott had obtained the services of Daniel Stevens as helper on his truck. On that day David Lee Brooks was employed by the employer, washing bottles and cleaning up in the bottling room of their plant. Daniel Stevens was fifteen years of age, and David Lee Brooks was thirteen years of age, although he had represented to the employer that he was fourteen years of age.

"It was a custom that the last driver reporting back to the employer's place of business, after finishing work for the day, would assist in placing the trucks in the garage. On July 16th, 1943, Alfred V. Scharlott was the last driver-salesman to report back after finishing his day's work. He drove his truck into the Bottling Department and went into the office to check in his day's receipts. There were two of the employer's trucks in the yard which had to be put away for the night. David Lee Brooks got into the cab and sat down in one of these trucks, and Alfred V. Scharlott and Daniel Stevens came out of the Bottling Room and walked towards the truck in which

David 'Lee Brooks was sitting. Daniel Stevens got into the right-hand ▇▇▇ side of the cab of the truck and sat on the seat, and David Lee Brooks was sitting to his left in the middle of the seat, and Alfred V. Scharlott got onto the running board on the left-hand side of the truck. Mr. Scharlott then told David Lee Brooks to get over under the steering wheel and drive the truck into the garage. The Brooks boy told Mr. Scharlott that he did not know how to drive, and informed Mr. Scharlott that he was afraid to drive the truck, and Mr. Scharlott kept telling him what to do, and told him to turn on the gas and put his foot on some of the pedals, and the Brooks boy kept telling him that he was afraid to try to drive the truck into the garage. The Stevens boy put his foot on the starter and the truck started forward. Before the truck started moving it was about twenty feet from the garage and facing towards the garage. When the truck was about seven or eight feet from the door of the garage, the Stevens boy testified he could see it was going to hit, so he jumped out of the truck cab and ran towards the office. The truck continued to move towards the garage and pinned Alfred V. Scharlott against the wall of the garage, causing him to sustain injuries from which he later died. There was nothing that would have prevented Mr. Scharlott from stepping off the running board before the truck pinned him against the wall of the garage.

"Mr. Stanley had asked the deceased to help put the trucks away, and at the time of the accident Mr. Stanley was in the other truck backing it away. He was a distance of about twenty feet from the truck Mr. Scharlott was to put away, and could not hear the conversation between Mr. Scharlott and the Brooks boy in the cab of the truck in question.

"Mr. Scharlott had been given specific instructions by his employer that no one else was to drive the truck except himself."

We desire to add to the above statement a few comments of our own. The assertion in the last paragraph, with reference to the specific instruction that no one was to drive the truck except Scharlott, is incomplete. We quote from the record the only evidence on this point, as given by Edward A. Kraus, manager of the bottling company:

"Yes, sir, they were given specific instructions at the time they were employed that no one else was to drive the truck except themselves, from the time they left in the morning until they returned in the evening."

The witness in his answer, when he used the word "they", was referring to four salesmen of which Scharlott was one. We also desire to add that both of the boys, Daniel Stevens and David Lee Brooks, in addition to helping the salesmen on their routes also performed duties at various times at the plant. They were paid by the bottling company for these duties and while on the premises

were under the control of the defendant company. Mr. Stanley, who had asked the deceased to put the trucks away, was in charge of the plant at the time of the accident.

The sole contention made on this appeal by appellants is that the death of Scharlott did not arise out of and in the course of his employment. This contention of appellants is based on the theory that Scharlott had been specifically instructed that no one else should be permitted to drive the truck he was employed to operate; that at the time of the accident he had violated this instruction by urging David Lee Brooks to drive the truck. Appellants assert that "his injury was caused by his act in inducing the Brooks boy to drive the truck while he stood upon the running board." We do not think this last statement accurate. Brooks testified that he was afraid to drive and did not intend to do so. Note his evidence:

"Q. Then what happened? A. Well, Mr. Al came out and stood on the running board and opened the door and I was sitting on the righthand side and he told me to get under the steering wheel and drive the truck into the garage so I told him I didn't know how to drive and I told him I was afraid and he kept telling me what to work, told me to turn on the gas and put my foot on some of the pedals or something so I kept telling him I was 'skeered' so Mr. Stanley wanted to close up the factory so I got ready to go out of the garage when Stevens put his foot on the starter.

"Q. Now what were you doing to those things as he was directing you, what were you going to eventually do? A. I was going to get out. . . .

"Q. And before you could get out of the truck this other boy stepped on the starter and the truck jumped forward, is that right? A. Yes, sir."

The Stevens boy, who was sitting on the right-hand side, had not been instructed or told to do anything, yet he is the one who stepped on the starter and caused the truck to move forward. The evidence given by Stevens corroborates the above version of the accident.

If appellants' interpretation of the instructions given to the drivers is to be used, then Mr. Stanley, who was in charge of the plant at the time of the accident, violated the instructions, because he drove a truck into the garage that belonged to one of the drivers. He also instructed Scharlott to put a truck in the garage that belonged to another driver. As we interpret the instructions they meant, that while the drivers employed by the company were on their routes with merchandise they should not let anyone else operate the trucks. The instructions, as testified to by the manager, so read. Note that he said no one else was to drive the trucks "from the time they left in the morning until they returned in the evening." That did not include the work that Stanley and Scharlott were engaged in at the time the

accident occurred. However, even if we concede that Scharlott violated his instructions by attempting to persuade Brooks to drive the truck, that was not the direct and proximate cause of the accident. Brooks testified that he was about to get out because he was "skeered" and that Stevens stepped on the starter. Scharlott was instructed to drive the truck into the garage and therefore at the time he received his injury he was at a place his duties required him to be and was attempting to perform a task assigned to him. Negligence is not a defense in this case. We are of the opinion that the finding of the Compensation Commission that Scharlott's death was caused by an accident arising out of and in the course of his employment was supported by substantial evidence.

Appellants cited the followng cases in support of their theory. We have read each case carefully and an examination of them discloses that the injured employee in each case, at the time he sustained his injury, was not at a place where his duties required him to be and was not at the time performing any task assigned to him. The cases cited are: Ricketts v. Story Laundry & Dry Cleaning Co., 155 S. W. (2d) 536, 539 (Kansas City Court of Appeals); Smith v. Seaman & Schuske Metal Works Co., 344 Mo. 559, 127 S. W. (2d) 435; Cassidy v. Eternit, Inc., 326 Mo. 342, 32 S. W. (2d) 75; Kasper v. Liberty Foundry Co., 54 S. W. (2d) 1022 (Mo. App.); Miliata v. Jack Rabbit Candy Co., 54 S. W. (2d) 779, (Mo. App.); Probst v. St. Louis Basket & Box Co., 52 S. W. (2d) 501 (Mo. App.); Bise v. Tarlton, 35 S. W. (2d) 993, 995 (Mo. App.); Smith v. Levis-Zukoski Merc. Co., 223 Mo. App. 743, 14 S. W. (2d) 470, 472 (Mo. App.); Morris & Co. v. Industrial Commission, 128 N. E. 727 (Ill.). To illustrate the general run of these cases we desire to refer to a few. In the Ricketts case the employee was injured when she fell on a stairway while returning from a personal mission. She had gone to see her mother, who was also employed at the plant, on another floor. It was held that the accident did not arise out of and in the course of employment. In Smith v. Seaman & Schuske Metal Works Co., the employee was assigned to a repair job. He inspected it and then went home to change his clothes and while on this mission met with an accident. It was held that he was not at the time he sustained his injury engaged in any duties for his employer. In the case of Smith v. Levis-Zukoski Merc. Co., the employee came to his death by falling down an elevator shaft. The court found that there was no evidence to show that Smith, at the time of the accident, was performing any work connected with his duties and therefore that there was no evidence to support a finding that the accident arose out of and in the course of employment. The other cases cited are of about the same tenure.

In the case at bar the evidence showed definitely that deceased was at the time of his injury attempting to perform a task within the

scope of his employment. The Compensation Commission was justified in finding that if it had not been for the unexpected action of Stevens in stepping on the starter the accident and injury would not have occurred. This court has held that a mere violation of a rule does not necessarily defeat recovery under the compensation law. In Crutcher v. Curtiss-Robertson Airplane Mfg. Co., 52 S. W. (2d) 1019, 1. c. 1023, 331 Mo. 169, Crutcher was an inspector of planes. He lost his life when a plane in which he was riding crashed. He had inspected the plane and was sitting therein signing inspection cards when a pilot started the plane to take it to a hangar. It was contended that Crutcher had no duties to perform in the plane and that it was against the rules for him to ▓▓▓ ride therein while it was being taxied or flown to the hangar. This court in answer to that contention said:

"We think it is of little consequence whether he understood that the plane was about to be taxied or about to be flown to the hangar. In either case he elected to go with it, and it matters not that he might have been negligent or disobedient if performance of the services for which he was employed reasonably required that he do so as a part of such services. And there was substantial evidence that such might have been the case because Dr. Damon, when asked whether a plane is ever transferred from the factory to the storage hangar until it has been completely inspected, replied: 'Not generally; it might have occurred. There is a shop order against it, but when working under rather crowded conditions it might have happened.'"

From what we have said it follows that the judgment of the trial court affirming the award of the Compensation Commission must be and is hereby affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by Westhues, C., is adopted as the opinion on the court. All the judges concur.