MARY H. BROWN, (Widow) v. WEBER IMPLEMENT AND AUTO COM-
PANY, (Employer and Self-Insurer), Appellant.—No. 40360.—206
S. W. (2d) 350.

Division Two, November 10, 1947.

Rehearing Denied, December 8, 1947.

*Paul J. Kaveney* for appellant; *Robert W. Herr* on the brief.

*Al F. Gerritzen* for respondent.

4

[351] BARRETT, C.—On Saturday night, February 10, 1945, Nash Brown and his wife, Mary, and Walter Folle and his wife, Melba, went to the Chain Yacht Club, a branch of the St. Louis Boating Association, at 10200 Riverview on the Mississippi River. As they were returning to the Brown residence, 1949 Alice, about 1:30 Sunday morning, the 1939 Plymouth automobile in which they were riding collided with a telephone pole in the 9000 block on Riverview and Nash Brown died as a result of injuries received in the collision. Brown was employed as a salesman by Weber Implement and Auto Company and the Plymouth automobile belonged to his employer. Upon the theory that Brown was injured and died by reason of an "accident arising out of and in the course of his employment" (Mo. R. S. A. Sec. 3691) the Workmen's Compensation Commission made an award to his dependent wife and children of $11,650. Upon this appeal the employer, Weber Implement and Auto Company, contends that the dependents' evidence in support of their claim is so conflicting, contradictory and uncertain that this court is justified in not believing any of the evidence in which event there would be a total failure of proof. If this view is not accepted then the employer urges that there was not "competent and substantial evidence upon the whole record" (Const. Mo. Art. 5, Sec. 22) to support the claim and for that reason compensation should have been denied. In this connection it is urged that the employee, Brown, had deviated from his employment and was upon a purely personal pleasure trip, that the accident did not occur at a time or place when or where he was reasonably fulfilling the duties of his employment, or when he was engaged in some activity incidental to his employment which had a causal connection with his employment, injuries and death. It is urged that he was engaged in a purely voluntary act outside the duties for which he was employed and not known to or accepted by the employer and therefore his injuries did not arise in the course of his employment. At most, it is said, the evidence in this connection creates a mere equipoise and therefore the dependents failed to sustain the burden of proving that the accident arose out of and in the course of the employment. In the third place it is contended, even if the claim is otherwise compensable, that compensation should be denied because the evidence conclusively shows that Brown violated

two company rules which took him outside the course of his employment. In this connection it is [352] claimed that he had no authority to solicit an order at the Chain Yacht Club which was outside his sales territory and that Folle, a third person, in violation of a company rule, was driving the Plymouth automobile at the time of the collision. The yacht and boating clubs are private social organizations and it is the employer's theory that the Browns and Folles went there on Saturday night for an evening of drinking, dancing and personal pleasure which had no connection whatever with Brown's employment.

In connection with its first point the employer points to contradictions in the testimony of certain of dependents' witnesses, to instances of testimony contrary to previous depositions, to certain discrepancies and improbable testimony and urges that it is so conflicting, contradictory and fantastic that it is unworthy of belief and that, therefore, all the dependents' evidence should be rejected. But, much of the testimony to which the employer points did not relate to the essence of the claim and the contradictions and discrepancies relied upon are certainly not comparable to an instance of a witness or a claimant being the only witness to a fact vital to the cause and without explanation or excuse positively testifying on direct examination to the fact and upon re-direct examination testifying to another and contrary fact leaving, as a matter of law, nothing for the finder of the fact to consider. Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S. W. (2d) 626; Stevens v. Thompson (Mo. App.), 175 S. W. (2d) 166. Compare: Summa v. Morgan Real Estate Co., 350 Mo. 205, 215, 165 S. W. (2d) 390, 394. Furthermore, while the constitutional provision for the review of findings of administrative agencies (Const. Mo. Art. 5, Sec. 22) has changed the method of review (Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S. W. (2d) 647) and the Commission's award "is now to be regarded as having more nearly the force and effect of a judgment in a non-jury case under the new Civil Code" (Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S. W. (2d) 55, 63), an appellate court may not, as the appellant in effect argues, substitute its "judgment on the evidence for that of the administrative tribunal," and, we yet adhere to the rule of deference to findings involving the credibility of witnesses. The contradictions and discrepancies upon which the employer relies fall within this phase of the rule. The finding here was one of fact and we are to determine whether the Commission "could have reasonably made its findings and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence." Wood v. Wagner Electric Corp., supra; Seabaugh's Dependents v. Garver Lumber Mfg. Co., supra. Consequently, the meritorious question upon this appeal is whether, upon a consideration of

the whole record, there is competent and substantial evidence in support of the Commission's finding of fact that Nash Brown died as the result of injuries arising out of and in the course of his employment.

The Weber Implement and Auto Company was a dealer in automobile parts and accessories. Nash Brown had been employed by the company for about twenty years, first as a parts man and in later years as a salesman. The company paid him a salary and a commission on sales after his sales reached a certain sum and all his expenses while he was on the road. In addition, the company furnished him with an automobile which it kept up and upon which it paid all expenses. At the time of his death Brown was an out-of-town salesman. According to the company's evidence his territory was southern Illinois and northern Missouri, north of Route 50. The St. Louis Yacht Club is north of Route 50, but the company contended that it was not in Brown's territory because it is in St. Louis County, territory of its city salesman. During the week, from Monday to Friday night, Brown was out on the road calling on customers in his assigned territory. On Saturday morning he reported to the company office. On Saturday, the 10th of February, 1945, he was around the office until in the afternoon, and on that day was given the automobile involved in the collision and the car he regularly used was left at the company for service.

[353] Mrs. Brown and Mr. and Mrs. Folle testified that they had made arrangements for the two couples to attend a bowling party on Saturday night at the Perpetual Help Church, which was in their neighborhood. Mrs. Brown was a member of the bowling team. But during the afternoon Harry Precht telephoned the Weber Implement and Auto Company and asked that Brown call him. When Brown called Precht told him that he wanted to talk to him about buying some spark plugs and oil for the club and requested him to come up to the club that night. Consequently, when Brown came home, their plans were altered and instead of going to the bowling party the two couples went to the Yacht Club in the company's Plymouth automobile. Brown drove and they arrived at the club about 9:30. Mrs. Brown testified that they intended to leave the Yacht Club after Brown talked to Precht and go to the bowling party but Precht did not arrive at the club until after eleven o'clock and it was then too late for the bowling party. After Brown talked to Precht it was 11:30 or 11:45 and the two couples remained at the club dancing and drinking. The club closed about 1:30 and while they were on their way home, with Folle driving at a speed of twenty-five to thirty miles an hour, according to the dependents' evidence, the right rear wheel came off and the car collided with a telephone pole. The testimony was that neither Brown nor Folle were drunk and Brown requested Folle to drive because he was tired and wanted to relax.

Members of the boat and yacht clubs testified that they had discontinued the practice of carrying spark plugs and oil and at a regular meeting of the board, in the latter part of January, had decided to again carry a stock of both for the benefit of their members. Precht was secretary-treasurer of the clubs and the board delegated to him the task of contacting Brown with reference to furnishing the oil and the plugs and to advise them as to the type of plugs they would need for the boats and motors. Precht testified that it was pursuant to this authorization that Brown was called. It was difficult to obtain spark plugs in 1944 and the early part of 1945, and it would have been an accommodation to the club if Brown would furnish them, regardless of the price.

Precht testified that he was late getting home and, consequently, it was after eleven o'clock when he arrived at the club. But, immediately upon his arrival, he and Brown sat down at a table and began talking business. Mrs. Brown and the Folles saw them talking and two or three club members saw them talking. One or two of the members heard bits of the conversation. Precht testified that the first thing he did was to give Brown an order for five cases of motor oil. He then told Brown about the five different types of motors in the clubs' boats and requested him to supply spark plugs for those. After some discussion he gave Brown an order for ten dozen spark plugs, two dozen for each type of motor. Brown carried a small, green covered, paper notebook consisting of twenty sheets and the last entry on the last page, which Brown wrote at the conclusion of their conversation, is "2/10/45 Bill Chain Yacht Club for cans and plugs." Some of the dependents' witnesses, in addition to Precht, saw the notebook and one or two of them saw Brown write in it. Another club member testified that Brown subsequently thanked him for the order. On the same page of the notebook was an itemization of Brown's expenses.

The employer points to all these circumstances; to the inconsistencies and improbabilities in the dependents' evidence; to the fact that this was a social club of which the Browns were members and in the habit of frequenting, especially on Saturday night, and to the evidence indicating that they were there for a purely social evening, and the fact that the club was not in Brown's territory and insists, therefore, that upon the whole record there is not competent and substantial evidence that his injuries and death arose out of and in the course of his employment. The employer contends, in these circumstances, that the dependents failed to sustain their burden of proving that Brown's injuries and death arose out of and in the course of his employment. DeLille v. Holton-Seelye Co., 334 Mo. 464, 66 S. W. (2d) 834. After Brown talked to Precht the Browns and the Folles remained at the club drinking and dancing [354] until 1:30 and it is urged, therefore, that he had deviated from any possible

connection with his employment which, in any view, was merely co-incidental in the first place. In short the employer contends that the circumstances of this case fall within Duggan v. Toombs-Fay Sash & Door Co., 228 Mo. App. 61, 66 S. W. (2d) 973; Kinkead v. Management & Engineering Co. (Mo. App.), 103 S. W. (2d) 545 and Huskey v. Kane Chevrolet Co. (Mo. App.), 173 S. W. (2d) 637. The employer seeks to apply the test evolved by Mr. Justice Cardozo (Marks v. Gray, 251 N. Y. 90, 167 N. E. 181), used in McMain v. J. J. Connor & Sons Const. Co., 337 Mo. 40, 85 S. W. (2d) 43) and insists, in any event, that Brown's employment did not bring him on the trip or expose him to its perils and, therefore, his injuries did not arise out of and in the course of his employment.

It should be noted, in the first place, that in all these cases, except the Duggan case, there was a finding by the Commission in favor of the employer and against the employee or the claimant and, even under the new method of review, this fact—the way the Commission found—is of some force. As we have said, the appellate court may not substitute its judgment for that of the Commission if there is competent and substantial evidence upon the whole record in support of the finding and award. In the Wood and Seabaugh cases there was not substantial evidence in support of the fact vital to the award.

Even though the Yacht Club was not in Brown's territory the employer's evidence was to the effect that an order by him would have been recognized but the credit and commission for the order would have gone to the city salesman, Walsh. However, in addition to the circumstances above set forth the dependents produced an invoice from Weber Implement and Automobile Company to the "St. Louis Chain Yacht Club" dated "3/29/43" with Brown's name at the top of the invoice. The employer seeks to explain away the effect of the invoice, which admittedly came as a surprise, by contending that Brown was a city salesman in 1943 and in any event that it did not show that he was acting in the course of his employment when he obtained an order outside his territory, near midnight, in February 1945. But Brown's immediate superior did not say that Brown worked in restricted hours only. All he would say was, "If he done anything after six o'clock it was without my knowledge." The evidence does not conclusively show with certainty what Brown's territory was in 1943. Mrs. Brown testified that for a while after the war broke out he was their only salesman and went every place. When asked how long he had been an out-of-town salesman Mrs. Brown said, "I would say *this last time about a year*." The only positive testimony by the employer was that in 1945 Brown had a restricted out-of-town territory. So, whether he was an out-of-town salesman in 1943 is left in doubt. Mrs. Brown testified, however, that in 1945 Brown had and called upon at least one old St. Louis customer. She

testified that he got "a certain fluid they put in tires" and some "tires to cap" from Paul Gosrow at Florissant and Fair in St. Louis.

Each case involving whether an accident arose "out of and in the course of" one's employment, of necessity, must stand upon and be determined by its particular circumstances. Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S. W. (2d) 915. Even though Brown delayed his departure from the club an hour and a half he was on the direct route home when he was injured. McCoy v. Simpson, 346 Mo. 72, 139 S. W. (2d) 950; Beem v. H. D. Lee Mercantile Co., 337 Mo. 114, 85 S. W. (2d) 441. That circumstance alone distinguishes the Duggan case. From the dependents' evidence the Commission could draw the inference that the work of the employee created the necessity for the travel and that "the trip would have been made though the private errand had been canceled." Marks v. Gray, supra; McMain v. J. J. Connor & Sons Const. Co., supra. In short, without distinguishing the cases relied upon and without further analyzing and contrasting the evidence, the facts and circumstances of this case, as the Commission could and did find, fall within McCoy v. Simpson, supra; Beem v. H. D. Lee Mercantile Co., supra; Sawtell v. Stern Bros. & Co., 226 Mo. App. 485, 44 **[355]** S. W. (2d) 264; Schulte v. Grand Union Tea & Coffee Co. (Mo. App.), 43 S. W. (2d) 832 and Thurber v. Allied Motors, 235 Mo. App. 1191, 150 S. W. (2d) 1109. Even though it be assumed that the Commission could have found for the employer (Edwards v. Al Fresco Adv. Co., 340 Mo. 342, 100 S. W. (2d) 513), there was competent and substantial evidence upon the whole record in support of its finding in favor of the dependents within the meaning of the Constitution, Article 5, Section 22, and the Wood and Seabaugh cases.

Even so the employer contends that Brown, in going to the Yacht Club and procuring an order outside his territory and in permitting Folle to drive the company car on the homeward trip, violated two positive company rules and for that reason his dependents are not entitled to recover. But aside from any factual inferences which might be drawn from the evidence respecting these two oral rules, their recognition and enforcement, there isn't anything in the compensation act making the mere violation of a company rule a defense to a claim for compensation; except, of course, the failure of an employee "to obey any reasonable rule adopted by the employer for the safety of employees" (Mo. R. S. A. Sec. 3691), which reduces an award fifteen per cent. This phase of the statute and its violation is not involved on this appeal. A violation of a company rule, such as doing prohibited work (Kaspar v. Liberty Foundry Co. (Mo. App.), 54 S. W. (2d) 1002) or engaging in an activity personal to the employee (Staten v. Long-Turner Const. Co. (Mo. App.), 185 S. W. (2d) 375; Miliato v. Jack Rabbit Candy Co. (Mo. App.), 54 S. W. (2d) 779) may be such conduct as to take an employee outside the

10

course of his employment but it is not in and of itself a statutory defense to a claim for compensation and does not necessarily defeat recovery. 71 C. J., Sec. 459, p. 743 and the annotations in 23 A. L. R. 1161; 26 A. L. R. 166; 58 A. L. R. 197; 83 A. L. R. 1211; 119 A. L. R. 1409. In contrast with an employee's doing some forbidden act, wholly outside the sphere and ambit of his employment (23 A. L. R. l. c. 1167), "Where a workman does the thing he was employed to do, but does it in a prohibited manner,—in other words, if the act which caused the injury was within the sphere of the servant's employment,—the fact that he had been expressly forbidden to do that act will not be fatal to his claim." 23 A. L. R. l. c. 1163; 119 A. L. R. l. c. 1410. In addition, in this case, the dependents' evidence tended to show that because of some defect in the wheel, and not the fact of who was driving the car, the right rear wheel came off causing the car to collide with the telephone pole and therefore there was no causal connection between the violation of any company rule and the employee's injury and death. Scharlott v. New Empire Bottling Co., 354 Mo. 971, 192 S. W. (2d) 853.

Upon consideration of the whole record there was competent and substantial evidence in support of the Commission's finding and award and the judgment is therefore affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.