ANNA SCHAEFER, DEPENDENT OF JOHN SCHAEFER, DECEASED (CLAIM-
ANT), RESPONDENT, v. ST. LOUIS INDEPENDENT PACKING COM-
PANY, A CORPORATION (EMPLOYER), AND GLOBE INDEMNITY COM-
PANY, A CORPORATION (INSURER), APPELLANTS.—38 S. W. (2d)
303.

St. Louis Court of Appeals.   Opinion filed April 28, 1931.

*Jones, Hocker, Sullivan & Angert* and *Willard A. McCaleb* for
appellants.

508

*W. F. Stahlhuth* for respondent.

NIPPER, J.—This is an appeal from the circuit court, affirming an award of the Workmen's Compensation Commission made in favor of claimant and against appellants.

The claimant is the sole dependent of John Schaefer, deceased. The evidence was heard, and an award entered in favor of the claimant for the total amount of $3,990, and thereafter the case was heard by the full commission and the above award was affirmed with the exception that two hundred weeks' compensation originally awarded was changed to three hundred weeks in accordance with the original intent of the arbitrator.

The facts disclose that claimant, Anna Schaefer, is thirty years of age, and lived with her father until he died. She is an invalid, and was totally dependent on him for support. Her father, John Schaefer, was a laborer, employed by the St. Louis Independent Packing Company, in the hog killing department. At the time of his death, he was fifty-three years old.

The claimant testified that on Friday morning, December 23, 1927, she saw her father when he went to work, and did not notice anything wrong with his hand. When he returned home that night his hand was swollen, and, in response to a question as to what the trouble was, she was permitted to testify, over the objections of defendants' counsel, that her father said that he had scratched his hand while at work, and had then put it in water which was too hot. Blood poisoning developed and a few days later he died.

The evidence discloses that the deceased was a man who rarely complained of any injuries, but preferred to conceal as much as possible things of this kind from those with whom he was most closely associated. On Saturday, the next day following, deceased went to his work at the usual time, and worked all day and overtime. When he returned home he had a chill and went to bed. On Monday morning his hand was much worse, and a doctor was called in to treat him. He was then sent to a St. Louis hospital, where he died on December 29, 1927.

There is no particular discussion here as to the amount of salary the deceased earned or the amount of the claim allowed. The questions raised on appeal are that there is no evidence to show that the injuries received as the result of the accident arose out of and in the course of the deceased's employment; that hearsay evidence alone will not support an award of the commission; and that aside from the hearsay evidence there is not sufficient competent evidence in this record to support the award of the commission as made. We shall, therefore, direct our attention to a discussion of evidence produced before the commission.

The claimant testified that there was a scratch on the middle knuckle of her father's right hand, and that she did not notice any other scratches when he returned home Friday evening, because the hand was very badly swollen, and that all she knew about the injury was what he told her.

A sister-in-law of the claimant testified that she was at the home of the deceased when he returned on the Friday evening first mentioned, and noticed the condition of his hand. He made the statement to her about how he received the injury. This testimony, as stated before, was admitted, over the objections of defendant's counsel, although no exceptions were saved to the ruling.

The foreman of the plant where deceased worked testified that he knew deceased, and that it was his duty to clean the floor and pick up hogs when they fell on the floor; that deceased and other men would pick up the hogs with a block and tackle; that in the evenings when they were cleaning up, the deceased was required to put his hands in warm water in the sewers to clean them out; that the sewers were cleaned in the evening, and there was a lot of blood and other refuse that got in there from the hog tank where they scald the hogs, and that the hair which comes off the hogs and the blood runs down the sewer with the water; that the hair does not go down into the sewers. This foreman testified that before deceased went to the hospital he talked with him at the plant about his hand; that he did not look at the hand, but that deceased said to him, ''Bob, look here,'' but that he was busy at the time and merely told deceased to go to the first-aid office right away; that it was the

custom to send those who may be injured in any way to the first-aid office as soon as a report of the injury was made, or they had knowledge of it.

Defendant's foreman testified that deceased was a man who did not complain much, and never did complain.

This foreman, Hooper, testified on cross-examination, that deceased had no duties to perform with a knife, that in cleaning up the floor he used a shovel and a broom; that the water in the sewers where deceased was likely to put his hands was warm water that came out of the machines and was used to scald the hogs and wash them off; that the sewer is a depression or trough in the floor that carries off the refuse, and they have three big sewers; that in cleaning the sewers, deceased was required to get in there with his hands. Witness testified that he knew of no scratches that deceased received prior to this, and that the deceased could have received such scratches and he not know anything about it; that workmen frequently received an injury and witness would not know it, but since deceased's accident witness has drilled into the workmen that as soon as anything happens to them to go to the timekeeper's office.

Witness further testified that deceased never helped kill the hogs, and that the sewers were made of galvanized iron, which is set in the floor and has binders over it; that this water in the sewer comes from the sprinklers, the sprayers, the scrapers, and the scalding tub; that a man could scratch his hand on that galvanized sewer, but he had never heard of it, because it was nice and smooth. He also testified that he had lots of men under his employ who scratched their hands, and blood poisoning and infection had set in; that this happened many times.

A post-mortem examination showed a small abrasion on the dorsal surface of the index finger on the right hand and a small abrasion between the thumb and index finger on the right hand, and the cause of death was given as cellulitis of the right arm and hand.

Witness Telle, one of the timekeepers of defendant St. Louis Independent Packing Company, was placed on the stand, and testified on behalf of defendants. He did not know the exact duties of the deceased, but stated that he was a laborer in the hog killing department. He saw deceased's hand and saw that it was swollen. He tried to persuade deceased to go to a doctor, but that he merely answered that he was all right and was going back to work. He stated that it was the custom to report accidents to them down in the timekeeper's office; that the first he knew about deceased's injury was on Saturday, before Christmas; that deceased never reported any injury to him; that he did not see any cuts on the deceased's hands, and was sure there was none there because he looked at them. He asked Mr. Schaefer if he had received an injury, and

he merely replied, ''Oh, I'll be all right, I am all right,'' or something to that effect.

He further testified that they have cases of infection around the plant which are caused by cuts and scratches healing up too fast, and he supposed hog bristles, dirt and filth getting into open wounds could cause the condition of deceased's hand.

Dr. Vosburgh testified, on behalf of defendant, that he had looked over the hospital records, and heard the testimony given before the commissioner, and in his opinion as a physician there was no way to determine when and how and in what manner deceased received the infection in his hand, and that the infection is what is ordinarily known as blood poisoning, and that there are various and sundry ways that blood poisoning may enter the body and a patient become infected with it; that he might get it through a slight abrasion, and it might enter without an appreciable abrasion.

He further testified, in response to a hypothetical question on the condition of this sewer, that he would think there would be lots of germs of all kinds in there.

Clarence Needy testified on behalf of defendants that he had worked for defendant St. Louis Independent Packing Company and knew John Schaefer, and worked on the same floor with him. When asked if he ever knew or heard of an accident happening to him, he said he knew he got hurt up there. He knew he had a bad hand. ''It was all swelled up on him.''

Other witnesses testified, on behalf of defendants, that they worked in the hog killing department, but not at the particular place where deceased worked; that they knew nothing about him receiving any injury.

The point is also made by defendants, who are appellants here, that the findings of fact made by the commission are insufficient to support the award, and we may as well dispose of this question first. The findings made by the commission are not as complete as they perhaps should be, but we find, by reference to such findings, that the commission found that there was an accident occurring on the 23rd day of December, 1927, that at the time deceased was a laborer working in the employ of the employer, and that the accident happened by deceased getting a cut on the middle finger of his right hand, and that such injury resulted in the death of the deceased. In addition to the further finding as to the amount of wages deceased was receiving and the fact that the employer and employee had elected to accept the Workmen's Compensation Act, the commission made the further finding that the employee cut his knuckle while in the course of his employment, which became infected, causing death. While, as stated, this finding is not as complete as it should be, it is sufficient, in our opinion, to support the award made by

the commission, and defendants' contention in this respect should be, and is, overruled.

We now come to the principal question involved on this appeal, and while we agree with defendants' contention, that hearsay evidence, standing alone, will not support an award, we do think that the evidence adduced, aside from the hearsay portion of it, is sufficient to show that the deceased died from the infection he received in his hand, and that such infection arose out of and in the course of his employment. The testimony discloses that deceased's hand was not injured in any manner when he left home that morning; that it was injured when he returned that night. The foreman at defendant's place of business testified that it was the duty of deceased and others, while performing the services which they were employed to perform, to put their hands in these sewers to clean them out; that there was blood, hog hair, and other refuse, which would get into these sewers; and the doctor, who testified on behalf of defendants, stated, in answer to a hypothetical question as to the condition of these sewers, that his opinion was that there would be lots of germs of all kinds in the places where deceased was required to place his hands for the purpose of cleaning out the sewers. This, together with the other circumstances connected with this case, warranted and authorized the commission to make this award, and such award cannot be said to be based upon surmise and conjecture, but is based upon facts and circumstances which fully warranted the finding that deceased's hand became infected while in the performance of his duties, and it would make no difference where he received the scratch, if he received infection in the course of his employment, defendants would be liable. If we reject all the testimony with respect to how and when deceased received the scratch on his hand, we still have sufficient evidence to authorize the award of the commission which was made in this case.

It is said by appellants that to allow an award to be made under such circumstances as we have in this case would be to open the door to fraud. We do not think so. We appreciate the fact that, if there is no competent evidence showing liability on the part of the defendants, the award of the commission ought not be sustained. On the other hand, it is very difficult where an injury of this kind is received, and results in death, for claimant to establish such fact. Frequently these little accidents are witnessed by no one, and there is usually no eyewitness to tell how the accident happened, if death follows. There is no reason, in view of the object and purpose of the enactment of the Workmen's Compensation Act, to require claimant to make stronger proof before the Workmen's Compensation Commission than would be required to establish liability under the common law.

In view of the above and foregoing, the judgment is affirmed. *Haid, P. J.*, and *Becker, J.*, concur.