George SMITH, Employee, Plaintiff-Respondent,

v.

AMERICAN CAR & FOUNDRY DIVISION, A. C. F. INDUSTRIES, INCORPORATED, Employer, Self-Insurer, Defendant-Appellant.

No. 31321.

St. Louis Court of Appeals.

Missouri.

May 21, 1963.

Gentry, Bryant & Sheppard, Arnot L. Sheppard, St. Louis, for appellant.

Robert E. Ballman, and Oliver R. Farrell, St. Louis, for respondent.

BRADY, Commissioner.

In this proceeding brought under the Workmen's Compensation Law of this state, the referee found " * * * that the employee did not sustain an accident on December 8, 1959, arising out of and in the course of his employment * * *." On appeal, the Industrial Commission found that the employee did sustain an accident and awarded "10 per cent permanent partial disability of the body as a whole referable to low back strain" at the rate of $38.00 per week for 40 weeks. The Circuit Court of the City of St. Louis entered its judgment affirming the Industrial Commission and the defendant, hereinafter referred to as the employer, has perfected this appeal contending that there was a failure of substantial proof of the happening of an "accident" (as that term is used in a proceeding of this nature) and that the employee, hereinafter referred to as the claimant, failed to produce substantial evidence of a proximate causal connection between the accident alleged and his injury. Our statement of facts will, therefore, be confined to those issues and will be further restricted by the limits of our review in appeals of this nature wherein we are to ascertain if, upon the whole record, the Industrial Commission could have reasonably made its findings and reached its result considering the evidence in the light most favorable to the claimant. Forshey v. Universal Atlas Cement Company, Mo.App., 337 S.W.2d 544.

The claimant's testimony was that on Tuesday, December 8, 1959, he was working alone, operating a jackhammer which was about two and one-half feet long and weighed ninety pounds or more; that he was engaged in breaking a concrete and steel floor; that he had previously been working in a place where the floor was solid and when he started at this particular spot he did not know the floor was hollow; that he was trying to break out an area about three and one-half feet square; that the jackhammer broke through the floor into this hollow area and " * * * jerked me down on my left knee and hurt my left knee and hurt the left side of my back"; that the hollow area was about four feet deep; that the floor at this particular place was "about six inches" thick; that the whole hammer, not just the chisel end, went down into the pit but he did not, as the hole he had made was only big enough for the hammer; that on arising he felt a pain in the left side of his back and toward the top of his left knee; that this pain was severe; that prior to this occurrence, he had never had any trouble or pain or difficulty with his back; that after he arose and moved the jackhammer, his foreman came over to him in response to claimant's call to him; that he told the foreman " * * * this jackhammer broke through in the concrete and jerked me down on my knee and what was hurting, my knee and left side of my back"; that he asked permission to go to the dispensary and was told to go there; that he walked over there without assistance and saw the nurse; that there was no one else present; that the nurse put a bandage around his leg and gave him some liniment and some white tablets and told him to come back to see the doctor Thursday; that he was in the dispensary about fifteen minutes and then returned to work where he swept up with a broom until lunch time; that after lunch " * * * I worked in the same area just picking up around there; wasn't much I could do"; that he left work at 4:30 and went home still experiencing pain in his back, left knee and left hip; that he put

liniment and hot towels on these areas that night, rubbed with the liniment and took the tablets given him; that he returned to work for one more day which was either the day after this occurrence or the next day, and on that day he did light clean-up work in the foreman's office; and that he reported to the dispensary on Thursday and saw the doctor. The remainder of the claimant's testimony is taken up with the testimony as to his treatment, hospital time, type of work he did after this occurrence, and other matters not here pertinent. The medical records were introduced showing his admission to the hospital and Dr. Keenoy's final diagnosis as "low back strain acute."

To show a causal connection, claimant called Dr. Stephens who testified that he found " * * * an acute lumbosacral angle, with flat, or horizontal, sacrum"; that while the sacrum is ordinarily pitched at 45 degrees, the claimant's was pitched at "practically 90 degrees" which creates a "shearing" force resulting in an "inadequate low back"; and that this was a congenital condition. The claimant's counsel then propounded a long hypothetical question to Dr. Stephens (there is no contention raised herein as to the inclusion or exclusion of any of the elements of that question) and ended it by asking, " * * * Assuming that all of the facts I told you are true, could there be a causal relationship?" This question was objected to on the grounds that the condition the doctor found had not yet been stated. Counsel then developed the doctor's finding of "a low back chronic strain" and that in the doctor's opinion the congenital condition he found in claimant's back left the back "prone to trauma" and the doctor stated that " * * it is reasonable, in the realm of reasonability, that trauma could affect such a back." Counsel then reviewed his hypothetical question, again asking " * * * could the condition you found, be caused by the hyperthetical (sic) situation I gave? A. In my opinion it could, yes." Upon cross-examination, the doctor testified as

follows: "Q. You testified, doctor, that this man had—he has, what I believe you said was a congenitally weak back, is that right? A. Yes, sir. Q. All of the condition, doctor, you found on your examination, could exist with or without traumer (sic), couldn't they? A. Yes, sir. Q. And you said this man could have trouble with his back even though he had no traumer (sic) of any kind? A. That's right." He was then asked the following question by the referee and gave the answer shown: "REFEREE TAFF: In other words, doctor, he can have pain with a condition like this whether he has trauma or not, and whether he has any muscle spasms would determine whether he had pain or not? WITNESS: Yes."

▇ The term "accident," as used in the Workmen's Compensation Law of this state, is defined in Section 287.020, RSMo 1959, V.A.M.S., as follows:

"2. The word 'accident' as used in this chapter shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault and producing at the time objective symptoms of an injury."

Employer first contends that there was no "accident" as there was no unexpected or unforeseen event happening suddenly and violently. The claimant's testimony illustrates the lack of merit in this contention: "Q Now, did anything unusual occur on December 8, 1959, around eleven a. m. in the morning? A Yes, sir. Q All right; tell me what that was? A I was operating this jack hammer (sic) breaking concrete and steel, and this was a solid floor where I had been breaking and after I moved up to another place the floor was hollow; I didn't know it was hollow and it broke through, it broke through into a pit and jerked me down on my left knee and hurt my left knee and hurt the left side of my back." There can be no doubt that the sudden breaking through the concrete was unexpected as it took place where the claimant did not know the floor to be hollow and when, combined with the violent jerking of the claimant to his knee, this constitutes an "accident" as that term is defined in Section 287.020, supra.

▇ The employer then contends that this record fails to prove that there were any objective symptoms of an injury produced at the time. Of course, "at the time" is a phrase that must be given a reasonable constitution and, as used in the Compensation Act, this phrase does not mean that the event need reach its consummation immediately, but does mean as soon as the effects of the happening were manifest without any independent intervening cause being shown to be responsible for the condition. Schroeder v. Western Union Telegraph Co., Mo.App., 129 S.W.2d 917. Dr. Stephens testified that "A spasm is an involuntary contraction of muscle" and that it is an objective finding. When Dr. Keenoy examined the claimant on December 10, he testified that " * * * examination revealed spasms of the muscles on the left side of the lower back with tenderness over the sacro-iliac (sic) area * * * There was measured limitation of motion of the back in all directions." This witness also testified that on December 17 he found " * * * Severe back pain with muscle spasms and tenderness over the left lumbar area. In addition this time he had considerable abdominal distention and it developed he had an acute urinary extense" and that upon discharge " * * * he still had muscle spasms * * *." There is no attempt to show the presence of any independent intervening cause and on October 31, 1960, Dr. Stephens testified he found the "Motion of his back is limited * * * a little atrophy of the muscle of the left side." In view of this testimony, the employer's contention (quoting from its brief) "There is no evidence whatever in this record tending to establish a single objective symptom discoverable by either Dr. Keenoy or Dr. Stephens" is without merit.

The employer next contends that the claimant's testimony is so contradictory as to destroy its substantiality. Its citations of contradictory testimony are that claimant testified he told his foreman, Thierheimer, how he had been hurt and that the foreman denied this and gave testimony directly contradictory to that of claimant as to what claimant told him concerning the accident. This does not support the employer's allegation. The employer also cites as " * * * so contradictory as to destroy its substantiality" claimant's testimony that he told the nurse at the dispensary he had been injured and how it happened. The employer then states (in its brief), "She denied this" and proceeds to repeat her testimony. This does not constitute a contradiction by claimant of his own testimony. Another of the employer's citations of contradictory testimony is that he gave a statement to the witness McGrath which contradicts his testimony at the hearing as to how the accident happened. There is no doubt of the admissibility of such evidence to impeach the plaintiff, but such statements do not destroy the prima facie probative effect of the contrary testimony of the plaintiff given at the hearing. Miller v. Multiplex Faucet Co., Mo., 315 S.W.2d 224, 1. c. 227.

The employer's other citation as to the testimony by claimant " * * * so contradictory as to destroy its substantiality" is based upon three bits of his testimony. It contends that the claimant testified that he had just started work and the hole was "very small" and yet, as the brief states " * * * and on this same page he said that the entire hammer went down into the pit." The transcript discloses no inconsistency that " * * * he gave this testimony despite the fact that the concrete through which he was drilling was twenty inches thick (Tr. 8). But on cross-examination he testified that it was sixteen inches thick (Tr. 63), and further that it was only eight or ten inches thick (Tr. 64); and that he had drilled through about two or three inches of it (Tr. 64)." Again these "in-consistencies" if they are such, are not borne out by the transcript which discloses (with reference to the thickness of the concrete) that claimant's testimony was "The concrete was twenty inches thick what I had been breaking before I moved to another position" and this other position referred to was where he had the accident. While it is not as clearly stated, a careful reading of the claimant's cross-examination discloses that his testimony as to sixteen inches also refers to the place he was working before he moved to the scene of this accident. In fact, when asked on cross-examination if the concrete was twenty inches deep, he answered that it was eight to ten inches deep. It would serve no useful purpose to go further into the transcript's refutation of the employer's allegations of inconsistencies. Most of those allegations are without foundation in the transcript and the one or two that are certainly do not rise to the importance ascribed them by employer of testimony " * * * so contradictory as to destroy its substantiality." There is no merit to the first allegation of error.

The employer's last point is that claimant's evidence failed to establish a proximate causal connection. With commendable candor, claimant's counsel admits in his brief that " * * * the question should have asked the doctor whether in his opinion the accident 'did' cause the medical disability." However, claimant's theory is that the line of cases in this state holding that a hypothetical question which asks whether a certain accident "could" cause a certain injury supplies insufficient evidence of causation is applicable only to cases involving accidents which are claimed to have caused unusual injuries and in cases where the claimant suffers only an "ordinary type injury" as claimant urges he did in this case, his testimony alone is sufficient to establish causation. He urges that expert testimony as to the diagnosis or medical finding, when coupled with lay testimony as to the cause, is sufficient to infer causation and contends that in such cases a hypo-

thetical question using the word "could" is sufficient to substantiate causation. The employer urges that the cases where the testimony of the claimant alone or where that testimony is coupled with a "might" or "could" opinion from a medical expert is held sufficient to show a causal connection are cases where the injury is open and obvious or where the injury was such that it would naturally flow from the accident, such as a fracture after a fall, cut or burn cases or other similar injuries.

 It requires no citation of authority to call to mind the principle that the burden of proof in a workmen's compensation claim rests upon the claimant. It is equally well settled that burden is not carried when the claimant shows that the injury complained of resulted either from one or the other of two causes when the employer could be liable only if one were found to be the cause. Groce v. Pyle, Mo. App., 315 S.W.2d 482 [3]. In the instant case, we are confronted with a situation where the claimant's own medical expert in effect testified that the injury he found could have been caused by the accident or could have existed without any trauma. It follows that, standing alone, even if we were to accept a "could" answer as definite evidence of a causal connection, the testimony of claimant's medical expert would not substantiate the findings of the Industrial Commission. Groce v. Pyle, supra. We are, therefore, to decide if claimant, either by his own testimony standing alone or by that testimony coupled with the undisputed medical finding of the "low back sprain" and a "could" answer, can establish a causal connection.

 We cannot agree with the employer that the rule is to allow a causal connection to be shown by the claimant's own testimony or by a coupling of the claimant's testimony with a "could" answer of a medical expert only in the type of cases involving what might be called visible injuries. In Walker v. Pickwick Hotel, Mo. App., 211 S.W.2d 55, the medical findings

were as to internal injury to claimant's knee. The claimant had testified that he had slipped and his knee "popped" and hurt. The court held that "The testimony of claimant, if believed, constituted substantial evidence of the nature, *cause*, and extent of his disability * * *." (211 S. W.2d 55, 1. c. 58, emphasis supplied.) In Schroeder v. Western Union Telegraph Co., Mo.App., 129 S.W.2d 917, the medical expert answered the hypothetical question as to causal connection in this fashion: "Well, that accident could have been a precipitating factor in the development of it." This court held:

"* * * The medical testimony to the effect that such a blow to the claimant's head, sustained in the manner shown herein, could be the precipitating cause, the predisposing factor, and, as Dr. Moore further said, 'the exciting cause' of his condition, coupled with the circumstances shown in evidence that the claimant was not afflicted with any such condition prior to the time he met with the accident, but was sane and able to hold a job as a messenger boy for several months and up to the time of his injury, constitute a sufficient basis to warrant the reasonable inference drawn by the Commission that claimant's present condition of insanity arose out of and in the course of his employment and resulted from the accident of being knocked from his bicycle in the manner shown in the evidence."

On consideration of the motion for rehearing, the court distinguished Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, on the grounds, as stated by the court:

"* * * It will thus be seen that in the Kimmie case there was not only no evidence to show that the fall caused the cancerous condition and tumor, but that, on the contrary, the evidence showed that three months after the fall there was no cancerous condition or

tumor, and that no such condition was shown until more than a year thereafter."

The court distinguished Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, as follows:

" * * * The only evidence on behalf of plaintiff therein that the injury caused or aggravated his heart condition was the contradictory testimony of a single witness, which the court held was not sufficient to warrant the submission of the question to the jury in the absence of an explanation to show which of the two contradictory versions was true."

In Stephens v. Spuck Iron & Foundry Co., 358 Mo. 372, 214 S.W.2d 534, 1. c. 539, the deceased had tripped and fallen, breaking his left hip although the cause of death was pulmonary embolism. It is apparent from a reading of the opinion at 214 S.W. 2d 534, 1. c. 540, that the medical testimony did not reach that degree of certainty for which the employer here contends. Yet the deceased widow, claimant, was held to have proved that the injury sustained in the fall was " * * * the cause or was a contributing cause to the formation of the embolism. * * * "

In Morrow v. Orscheln Bros. Truck Lines, 235 Mo.App. 1166, 151 S.W.2d 138, the injury complained of was to the eye and the question presented was whether the condition of the eye was caused by a diseased nerve condition as employer contended, or by dust and grit as claimant asserted. The medical expert offered by the claimant answered the hypothetical question put to him with a "could" answer and further stated that the condition he found probably resulted from the injury since he found no other cause. The court held this was sufficient when combined with the claimant's evidence that prior to the injury the eye was in good condition and that,

immediately upon the happening of the accident, claimant felt a burning sensation with eye irritation and that he then sought medical attention. The court, under these circumstances, held that the medical expert's failure to state with more certainty the causal relationship between the accident and the eye condition did not deprive all the testimony on the subject of causation of the character of substantial evidence stating that Kimmie and similar cases did not rule otherwise.

Under the factual situation presented by this case, a workmen's compensation proceeding, the claimant's own testimony that when the jackhammer went through and he was pulled down to the floor he hurt the left side of his back, that he felt pain in his back immediately upon arising, that he had never experienced back trouble before and evidence that his doctor diagnosed his complaint as "low back strain," constituted evidence from which the Industrial Commission might reasonably find or infer a causal connection between the accident and his injury. We cannot say that the failure of his medical expert to testify with a greater degree of certainty deprived all of this evidence of its character as substantial evidence from which the Industrial Commission could reasonably have reached its conclusion. Morrow v. Orscheln Bros. Truck Lines, supra. The point is ruled adversely to the employer.

The judgment of the circuit court affirming the award of the Industrial Commission should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.