**William W. SMITH, Employee-Appellant,**

v.

**TERMINAL TRANSFER COMPANY, Employer-Respondent,**

and

**The Travelers Insurance Company, Insurer-Respondent.**

No. 23859.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1963.

Terrance W. Imes, Kansas City, for appellant.

Jack B. Robertson, Rogers, Field & Gentry, Kansas City, for respondents.

CROSS, Judge.

This case arose out of a claim for accidental injury benefits under the Workmen's Compensation Law. William W. Smith, the claimant-employee, has appealed from a judgment of the circuit court reversing a

final award in his favor in the sum of $4,-199.28 entered by the Industrial Commission of Missouri, subject to credit in the sum of $135.00 previously paid to him.

It is claimant's contention that the circuit court should have affirmed the Commission's award because it was supported by substantial competent evidence and was not against the overwhelming weight of the evidence. Instead, claimant complains, the circuit court erroneously disregarded the determinations of fact made by the Commission and reversed the award on its own "version of the facts".

■ In deciding the appeal issues presented it is not the province of this court to weigh the evidence and substitute its judgment thereon for that of the Commission. Our review is limited to determining whether that administrative tribunal could reasonably have made its findings and reached its result upon the evidence before it. If there is competent and substantial evidence upon which to base the award and if such award is not clearly contrary to the law or the overwhelming weight of the credible evidence, we are bound to affirm it. This rule is so axiomatic that no recital of authority for it is necessary. "The mere statement of the rule necessarily carries the implication of deference to the commission in respect to its findings on disputed questions of fact." Greer v. Missouri State Highway Department, Mo.App., 362 S.W.2d 773.

■ In resolving whether the Commission could reasonably have made its findings, this court upon its review of the whole record will look only to the evidence most favorable to the award, together with all reasonable inferences that tend to support it, and will disregard all opposing and unfavorable evidence, " * * * even though the finding of the commission to the contrary would also have been supported by evidence". Greer v. Missouri State Highway Department, supra, and cases therein cited. In accordance with the foregoing

rule, we here set out the facts pertinent to the issues to be decided.

In the year of 1956 claimant entered into employment by respondent Terminal Transfer Company as a truck driver. As a part of his duties he was required to load and unload various merchandise. The record does not reflect the happening of any incident, prior to the date of the alleged accident, bearing on the controversy arising from it. There is no history of any back injury or weakness suffered by claimant or any complaint by him thereof prior to October 3, 1961.

On the named date, in the course of his regular employment, claimant suffered an accidental injury to his back while he and a fellow employee, Tony Contorno, were engaged in the work of unloading sacks of sugar from a railroad car into a truck trailer. The two men were unloading the boxcar by first transferring the sacks of sugar, each of which weighed 60 pounds, onto a "two-wheeler" hand truck. They were stacking the sugar onto the two-wheeler seven sacks high. There is evidence that loose sugar had "trickled" out of the sacks onto the boxcar floor and that "it was slippery on the floor where the sugar was at". Claimant testified, "Well, we were unloading the sugar by way of a two-wheeler into the trailer. We were stacking it seven high, and I had the sixth one on and was going to the seventh one when I raised the seventh one up and turned around with it and I slipped on the sugar on the floor and went down against the boxcar, and the sugar (sacks) was just right beside each other, and I fell to them and I had pain in my lower back. * * * I slipped on the floor on the sugar when I was turning around putting it up, the other sack high." Contorno testified to the effect that claimant "twisted when he had that sack up in the air"; that he saw claimant fall up against the stack of sugar sacks, and that "I was standing right by him when he twisted". Contorno also said, "and when he twisted I seen him let go of it back up in front of the other ones on top—about

shoulder high". Immediately after claimant slipped, twisted and fell he suffered severe pain in his lower back, which he described as "excruciating" and as "a tremendous amount of pain", and told Contorno he had hurt his back. Claimant was unable to continue stacking the sugar sacks and did no more work that day. Contorno finished the job of unloading by himself and drove the truck to the employer's garage where claimant reported to Ray Thompson that he had hurt his back while working in the sugar car. Thompson suggested that claimant see a doctor. Claimant thought maybe it might be a bad sprain and told Thompson he would rather wait and see what it did. He suffered further severe pain that night.

Claimant returned to work the next morning. His back was then hurting him "pretty bad" and he so informed John Bunton, the warehouse superintendent, who assigned him a job to pick up and deliver a load which was to be handled by fork lifts and which required no lifting. Upon delivering the load claimant backed his truck to a freight dock and undertook to place a "bridge" from the truck to the dock. He bent over, got hold of the bridge, and started to lift it, but was unable to do so because he felt a tremendous amount of pain in his back which he described as the same excruciating pain he had felt the day before and the night before also. He did no more work that day and either Ray Thompson or John Bunton, the warehouse superintendent, sent him to Dr. Johnson, the company physician.

Dr. Johnson treated claimant with heat for a week or two, but he got no better, kept having pain and couldn't go back to work. With the consent of the insurance adjuster, claimant went to Dr. Hodge, who put him in the North Kansas City Hospital as an emergency patient and placed him in traction for about two weeks. While in the hospital claimant was examined and diagnosed by Dr. Workman, who testified on his behalf. After his release he still continued to suffer severe pain in the lower lumbar region, but returned to work about November 26, 1961. Terminal discharged claimant on December 13, 1961. Although at the time of the hearing claimant was re-employed, he continued to have back and leg pain which caused him loss of time from work.

Claimant's medical witness, Dr. Workman, examined and diagnosed claimant at the hospital on October 15, 1961, and subsequently at his office on October 27, 1961, March 17, 1962 and June 22, 1962, the latter date being four days before the referee's hearing. Dr. Workman's findings in respect to claimant's condition of disability, as narrated in evidence, include: no pathology of the spine shown by X-rays; back and leg pain; limitation of motion in the lumbar spine; lumbar muscle spasm; positive straight leg raising test; atrophy of the right calf; decreased ankle jerk on the right; numbness of the right foot; tenderness in the lumbo-sacral area and pain on forward and lateral bending. In the opinion of Dr. Workman claimant has a herniation of a spinal disc at the L–5, S–1 level, with compression of the nerve root, and that condition is the cause of claimant's disability. The doctor stated that a herniated disc is not shown by X-rays but that a myelogram is very helpful in confirming such condition. He recommends the performance of a myelogram and surgical operation on claimant in the nature of a spinal fusion if he is to continue to do heavy manual labor. Dr. Workman testified that in his opinion plaintiff's present disability without treatment by surgery was approximately 30 per cent of his body as a whole.

The witness also stated it was his opinion that the accident which occurred on October 3, 1961, when claimant was loading sugar, could have caused the condition found in his back, and could have caused the herniated disc, and that the disc could be injured more by lifting something else later. On cross examination Dr. Workman also testified that the incident of October 4th which happened when claimant bent down to pick up the "bridge" could have

caused the disc "to protrude (initially) or protrude further", but that he had no way of "dating" the disc injury except by what the patient told him.

Replying to questions as to the cause of a herniated disc injury, Dr. Workman testified in part as follows:

"A    I actually don't know what particular mechanisms are most likely to produce a herniated disc.  Many patients give different stories about what precipitated it.  One of my patients bent over to tie his shoe.  So it doesn't require severe force to produce a herniated disc.  Any force at all might produce it".

* * *

"A    Well, we think that the mechanism of disc production is probably a force that is exerted to an abnormal disc in flexion, but you are asking me the effective twist danger imposed upon bending, and I don't know the answer".

* * *

"A    There is lots we don't know about the mechanism of the lumbar spine".

* * *

"A    I would hesitate to say that. (That bending forward and leaning over was the only producing cause of disc herniation).  I don't think anybody knows.  What doctors get about the producing mechanism is simply what patients tell us.  It is impossible to— there is no way to get a strain gauge in the disc space to analyze it".

The employer also produced one medical witness, Dr. William H. Duncan, who diagnosed claimant's condition as "a ligamentous and muscular sprain of the lower back area with symptoms and findings slightly suggestive of possible nerve root compression". Although the witness expressed doubt that claimant had a herniated disc, he admitted the possibility of that condition, and testified that if claimant had a ruptured disc

it would be impossible to say whether it was produced by the accident in the boxcar on October 3d, or by claimant's effort to lift the bridge on October 4th, or by a combination of both occurrences.  He admitted on cross examination the claimant "would have had it started by number one and completed by number two".  Dr. Duncan further testified that if claimant had a negative myelogram (indicating there was no herniated disc) he would rate claimant's disability at between 10 and 15 per cent of the body as a whole.

The referee found from the evidence that claimant suffered an accident on October 3, 1961, resulting in injury to his back, that he was in Terminal's employ at the time thereof and that it arose out of and in the course of his employment.  The "exact" nature of the injury was stated by the referee as "Twenty-five per cent permanent partial disability of the back".  Additional specific findings of the referee are in part as follows:  "(Employee) Was employed as a truck driver and while unloading sacks of sugar, was caused to be thrown in an unusual twist and strain, falling against side of boxcar, resulting in injuries to the back.  * * *  I find from all the credible evidence that the employee, William W. Smith, sustained an accident arising out of and in the course of his employment with Terminal Transfer Company on or about October 3, 1961, resulting in injuries to the lower back, which entitles said employee to compensation for permanent partial disability of the back to the extent of 25 per cent, or 100 weeks at $40.00 per week.  * * *  I further find that said employee sustained, as a result of said accident, temporary total disability from October 5, 1961, to November 26, 1961, inclusive, or a total of 7⅗ weeks, during which period he was unable to return to gainful employment  * * *".

Upon review, the Industrial Commission found that the referee's award was supported by competent and substantial evidence, adopted his findings of fact, rulings and conclusions of law, and affirmed and

adopted his award of compensation to claimant.

It is respondents' position that the circuit court's judgment setting aside the award of the Industrial Commission is correct because "claimant failed to satisfy the burden of proving that his disability was a result of his injury of October 3, 1961". Therefore, respondents assert, "there was no competent or substantial evidence in the record to support the award of the Industrial Commission".

■■ In so contending, respondents rely upon certain well established rules. Citing appropriate authority, respondents remind us that in a workmen's compensation case the claimant must prove a causal connection between the injury and the alleged accident; that "proof that something is merely possible is not evidence sufficient to establish the burden of proof"; and, that a finding or award of the Commission may not rest alone on speculation, surmise or conjecture. It may be conceded that the foregoing statements of principle, as made by respondents, are substantially correct and apply in this case.

The gist of respondents' argument that claimant failed to establish a causal connection between his injuries and the accident on October 3d, is summarized in their brief as follows: "(1) Claimant filed a claim for injuries allegedly resulting from an accidental injury of October 3, 1961. (2) Claimant testified to two separate occurrences, one on October 3, 1961, and one on October 4, 1961, both resulting in injury to his back. (3) No claim was asserted that the injuries received in the second occurrence were compensable. (4) There was no evidence that Claimant's injuries were the result of the injury of October 3d. (5) There was no evidence as to how much of Claimant's disability, if any, resulted from the incident of October 3, and how much, if any, resulted from the incident of October 4. (6) The medical evidence was presented solely in terms of possibilities, there being a possibility that Claimant's injuries could have been the result of one incident or the other, or a combination of both". Stated more simply, it is respondents' contention that the medical evidence established only a *possibility* that claimant's injuries and disability were caused by the October 3d accident and that there was no evidence otherwise from which the Commission could have found the existence of such causal relation.

■ The essential elements of a workmen's compensation case are required *to be proven in the same manner as* essential elements are established in the ordinary action at law. A compensation claimant is not required to make stronger proof than would be required to establish liability under the common law. 100 C.J.S. Workmen's Compensation § 547(1), p. 577; Schaefer v. St. Louis Independent Packing Co., 225 Mo.App. 506, 38 S.W.2d 303. In workmen's compensation proceedings the claimant's burden of proof to establish that the injury resulted from an accident is no greater than his burden to establish any other essential element of his claim. While it is not sufficient to show that there is a "possibility" the injury was the result of the accident, the claimant's burden of proof of causal relation is satisfied by showing *with reasonable probability* that his injuries resulted from the accident to which he attributes them. See McCoy v. Simpson, 346 Mo. 72, 139 S.W.2d 950. "The finding of the commission need be based upon only a reasonable probability." Greer v. Missouri State Highway Department, Mo.App., 362 S.W.2d 773, citing Karch v. Empire Dist. Elec. Co., 358 Mo. 1062, 218 S.W.2d 765; Lunsford v. St. John's Hospital, Mo.App., 107 S.W.2d 163, 166; Gardner v. Ford Motor Co., Mo.App., 130 S.W.2d 201(6); Leonard v. Fisher Body Co., St. Louis Division of General Motors Corporation, Mo. App., 137 S.W.2d 604, 610.

"In compensation cases, as in other cases, to sustain the finding of an ultimate fact, it is not required that such fact be shown by direct and positive evidence, but

it may be shown by circumstantial evidence. It is not essential that all doubt be removed. It is only essential that the finding be based upon a reasonable probability." Zimmerman v. Goodfellow Lumber Co., Mo.App., 56 S.W.2d 608; Shrock v. Wolfe Auto Sales, Inc., Mo.Sup., 358 S.W.2d 812; Dunaway v. J. C. Penney Co., 240 Mo.App. 61, 209 S.W.2d 567.

■ In determining questions of fact the Industrial Commission has the right and the duty to draw such reasonable inferences as are warranted by the evidence taken as a whole and the circumstances disclosed by it. The findings and conclusions of the Commission based on such inferences are binding upon reviewing courts. O'Neil v. Fred Evens Motor Sales Co., Mo.App., 160 S.W. 2d 775.

■ The Commission is authorized to base its findings and award solely on the testimony of a claimant. His testimony alone, if believed, constitutes substantial evidence to establish that he sustained an injury arising by accident, Powers v. Universal Atlas Cement Co., Mo.App., 261 S.W. 2d 512, and, as stated by this court in Tuller v. Railway Express Agency, Inc., Mo.App., 235 S.W.2d 404, constitutes "substantial evidence of the nature, cause, and extent of his disability." [1]

In Garrison v. United States Cartridge Co., Mo.App., 197 S.W.2d 675, the court stated, "In view of the requirement of our act that for an injury to be compensable, it must have been sustained by accident, * * * the evidence must establish a causal connection between the injury and the accident. However, it is not imperative that such causal connection be shown by expert testimony, but it suffices if it appears from any competent evidence which sup-

ports such finding by the commission". To like effect is this court's ruling in Walker v. Pickwick Hotel, Mo.App., 211 S.W.2d 55. It must be acknowledged, however, that expert or medical testimony is necessary in some cases where there is a serious question resolvable only by skilled determination and which is not within the knowledge of lay witnesses or the fact finding tribunal— typically, cases involving scientific and technical questions relating to pathology and the etiology of disease arising subsequent to an injury. In Nick v. International Shoe Co., Mo.App., 200 S.W.2d 590, the court said, "An examination of the cases discloses that sometimes an injury may be of such a nature that expert opinion is essential to show that it was caused by the accident to which it is ascribed. But this is not so as to all injuries." [2]

In the late case, Smith v. American Car & Foundry Div., A.C.F. Ind., Inc., Mo.App., 368 S.W.2d 515, the court held as follows: "Under the factual situation presented by this case, a workmen's compensation proceeding, the claimant's own testimony that when the jackhammer went through and he was pulled down to the floor he hurt the left side of his back, that he felt pain in his back immediately upon arising, that he had never experienced back trouble before and evidence that his doctor diagnosed his complaint as 'low back strain,' constituted evidence from which the Industrial Commission might reasonably find or infer a causal connection between the accident and his injury. We cannot say that the failure of his medical expert to testify with a greater degree of certainty deprived all of this evidence of its character as substantial evidence from which the Industrial Commission could reasonably have reached its conclusion. Morrow v. Orscheln Bros. Truck Lines, supra (235 Mo.App. 1166, 151

1. Citing Walker v. Pickwick Hotel, Mo. App., 211 S.W.2d 55.

2. Citing Derschow v. St. Louis Public Service Co., 339 Mo. 63, 95 S.W.2d 1173, loc. cit. 1175; Meyers v. Wells, Mo.Sup., 273 S.W. 110, loc. cit. 116;

Edmondson v. Hotels Statler Co., 306 Mo. 216, loc. cit. 236, 267 S.W. 612, loc. cit. 617; Kinder v. Hannibal Car Wheel & Foundry Co., Mo.App., 18 S.W.2d 91, loc. cit. 93; Klohr v. Edwards, Mo.App., 94 S.W.2d 99, loc. cit. 105.

S.W.2d 138). The point is ruled adversely to the employer."

Since Larson in his treatise on Workmen's Compensation Law recognizes the principles we have noted above, we deem it appropriate to quote here from that authority. The following preliminary statement is made in Sec. 79, p. 287:

"In line with the general tendency of administrative law to recognize the expertise of specialized tribunals, compensation boards may rely to a considerable extent on their own knowledge and experience in uncomplicated medical matters, and in such cases awards may be upheld without medical testimony or even in defiance of the only medical testimony".

Continuing in Sections 79.50–79.54, pp. 299–303, Larson further states:

"In compensation law, the administrative-law-evidence problem of expert opinion and official notice finds its principal application in the handling of medical facts. The usual question is the extent to which findings of the existence, causation or consequences of various injuries or diseases can rest upon something other than direct medical testimony—the claimant's own description of his condition, for example, or the commission's expert knowledge acquired not by formal medical education but by the practical schooling that comes with years of handling similar cases".

\* \* \*

"To appraise the true degree of indispensability which should be accorded medical testimony, it is first necessary to dispel the misconception that valid awards can stand only if accompanied by a definite medical diagnosis. True,

in many instances it may be impossible to form a judgment on the relation of the employment to the injury, or relation of the injury to the disability, without analyzing in medical terms what the injury or disease is. But this is not invariable so".

\* \* \*

" \* \* \* (The) causal connection between an injury, such as a fracture of the back, and ensuing disability which had not existed before the injury, may be established without medical support".[3]

\* \* \*

"Even more striking is the holding that, if the circumstances themselves are persuasive enough, a conclusion supported by no medical testimony may stand in defiance of medical testimony to the contrary. This was true of the case just mentioned, involving a back fracture, where the only medical testimony in the record negated the connection between the injury and disability".[4]

\* \* \*

"In arriving at this rule, two underlying reasons may be discerned: the first is that lay testimony, including that of claimant himself, is of probative value in establishing such simple matters as the existence and location of pain, the sequence of events leading to the compensable condition, and the actual ability or inability of claimant to perform his work; the second is that industrial commissions generally become expert in analyzing certain uncomplicated kinds of medical facts, particularly those bearing on industrial causation, disability, malingering and the like".

In Valente v. Bourne Mills, 77 R.I. 274, 75 A.2d 191, the Supreme Court of Rhode

---

3. Citing: Jarka Corp. v. Norton (D.C. Pa.), 56 F.2d 287.

4. Also see Autry v. General Motors BOP Assembly Plant, 85 Ga.App. 500, 69 S.E.

2d 697, wherein the court said: "The director was not bound by the testimony of the physicians on the ultimate issue of fact, that of causation".

Island rejected the employer's argument that an award should not stand because there was no medical testimony to support it. As to the necessity of medical diagnosis the court said:

"The first contention, as stated, if literally followed would turn a compensation case into a clinic where doctors seek to determine the 'diagnosis' of a patient's ailment and the 'pathological nature' of that condition according to the more exacting norms of medical science. The application of so strict a rule to establish the required causal relationship in the field of law, where the ultimate objective is the attainment of substantial justice according to the remedial purposes and provisions of the act, would cast an unfair burden upon a person injured by accident."

\* \* \*

"We concede that in the great majority of cases such testimony ordinarily is necessary because of the seeming absence of connection between a particular accident and a claimed resulting injury. But in other cases involving special and peculiar circumstances, medical evidence, although highly desirable, is not always essential for an injured employee to make out a prima facie case, especially if the testimony is adequate, undisputed and unimpeached. Thus where, as in the instant case, injury appears in a bodily member reasonably soon after an accident, at the very place where the force was applied and with symptoms observable to the ordinary person, there arises, in the absence of believed testimony to the contrary, a natural inference that the injury, whatever may be the medical name, was the result of the employment."

Once more (and finally) we quote from Larson's treatise on Workmen's Compensation Law. Sec. 80.32, pp. 322–323 contains the following admonition that compensation awards should not stand or fall on "cautious" medical testimony:

"The distinction between probability and possibility should not follow too slavishly the witnesses' choice of words, as sometimes happens in respect to medical testimony. A doctor's use of such words as 'might', 'could', 'likely', 'possible' and 'may have', coupled with other credible evidence of a non-medical character, such as a sequence of symptoms or events corroborating the opinion, is sufficient to sustain an award. It is a common experience of compensation and personal injury lawyers to find that the more distinguished a medical witness is, the more tentative and qualified are his statements on the witness stand. He will testify that the sledge-hammer blow on claimant's head might have caused claimant's headache, but hesitates to say positively that this was the only possible cause, and may concede on cross-examination that there could conceivably be other causes. The weight of such testimony, however, should not be too sharply discounted because of the disposition of the highly-trained scientific mind to refrain from unqualified statements or opinions on such matters as causation.

\* \* \*

"\* \* \* It may indeed be questioned whether awards should stand or fall according to whether the medical witness happened to choose a phrase which meets a requirement based on such subtle gradations".

The medical evidence in this case is a vivid example of caution on the part of testifying experts, as well as a disclosure of their inability to demonstrate with scientific accuracy the cause of claimant's injury. It may be said in their behalf, however, that the prudence displayed by them in testifying is entirely justified in view of their forthright admission that they do not know what force or stress is the likely producing cause

of a herniated disc. Their professed knowledge on that subject appears to be no greater than is possessed by laymen. One of the experts frankly confesses his inability to "date" the disc rupture except by what the patient tells him.

It is apparent that medical learning is of little aid to the triers of fact in this case, except to furnish scientific evidence of the *possibility* that claimant's injuries resulted from the original accident. This does not mean that claimant must go hence from administrative and judicial tribunals without redress. The law providently affords him the right to establish the essential element of causation by probative evidence other than medical. "In accordance with the general rules, * * * a finding as to which of two or more accidents caused the disability cannot be upheld if based on mere conjecture, * * * but if there is evidence pointing to any logical theory of causation, indicating a logical sequence of cause and effect, the finder of fact is authorized to select that theory notwithstanding the existence of other plausible theories with or without support in evidence." 100 C.J.S. Workmen's Compensation § 555(16).[5] "Medical testimony of possibility may be sufficient to establish causation where corroborated by other and nonmedical evidence, as in the case of injuries so naturally and directly connected with the accident that proof of causality does not depend on expert evidence". 100 C.J.S. Workmen's Compensation § 555(5), p. 683.

In its final award of compensation the Industrial Commission made the specific finding that claimant sustained an accident on October 3, 1961, "resulting in injuries to the lower back", but made no finding that the incident of October 4th either caused or contributed to claimant's injuries or disability. The language employed in the finding above noted is plain and unambiguous. Consequently its effect will be declared in the light of its literal meaning. It is not necessary or appropriate that we search for any hidden or subtle meaning. We accept the finding in its natural and literal sense, and consider it to be a determination by the Commission that the proximate cause of claimant's condition of injury and disability was the compensable accident which occurred on October 3d, and that the incident of October 4th was not an initiating or contributing cause. It is our opinion that there is ample support in the record for the finding of causation so made by the Commission.

We believe that the preponderately reasonable inference to be drawn from the closely related sequence of events occurring within a period of less than 24 hours is that of a causal connection between the compensable accident of October 3, 1961 and claimant's disability as determined by the Commission. The results following that occurrence are so directly, immediately, naturally and probably attributable to it, that the finding of a casual connection between them does not depend upon the testimony of medical experts, but may properly be inferred by laymen.

It is an undisputed fact that claimant had no back injury, disability or pain prior to the accident. He has conclusively established that he suffered an accident on October 3d when he slipped on the car floor, "twisted" his body while holding a 60 pound sack of sugar, shoulder high, and sustained a fall while in that position. Since he suffered immediate pain in his back and was forthwith rendered unable to continue his work, it is reasonable to infer that torsional forces and stress had so operated as to cause an injury of some nature to his back. He reported his accident and injury immediately to his employer. His pain endured through the night and persisted until he attempted to work the following day. The result of his effort to lift the bridge, his first attempt at bodily effort of that nature since the original injury, was a recurrence of the pain he had felt the day before and had suffered during the intervening night.

5. See Hall v. Spot Martin, Inc., Mo., 304 S.W.2d 844.

and a confirmation of the existing fact that he had a back injury and was unable to work.

As we view the evidence showing this sequence of events, we believe that the most probable inference to be drawn therefrom in respect to the "lifting" incident of October 4th is that the pain claimant suffered on that occasion was only a manifestation or an acute symptom of the back injury he sustained from the accident on the previous day, and, in the language of the Supreme Court in Hall v. Spot Martin, supra, that "the second alleged injury was merely the occasion for him to know that he had further trouble with his back." The Commission was amply justified in rejecting the incident of October 4th as a cause of claimant's injury and disability.

In reaching these conclusions we have duly considered authorities cited and relied upon by respondents. We do not, however, regard those cases as persuasive on the question before us, because the fact situations therein presented are grossly dissimilar to the facts in this case. It is elementary that the question of causal connection is to be decided in the light of the particular facts and circumstances of each case.

Accordingly, we hold that the findings and award of the Commission are supported by competent and substantial evidence and are not contrary to the law or the overwhelming weight of the evidence.

The judgment is reversed and the cause is remanded to the circuit court with directions to enter its judgment affirming the award of the Industrial Commission.

All concur, including HIGGINS, Special Judge.

SPERRY, J., not sitting.