Orville HANDSHY, Plaintiff-Respondent,

v.

Jakie E. HASTY, Defendant-Appellant.

No. 33370.

St. Louis Court of Appeals.

Missouri.

July 15, 1969.

Adolph K. Schwartz, St. Louis, for defendant-appellant.

Norman Zaltsman, Clayton, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for plaintiff-respondent.

BRADY, Judge.

Plaintiff was the recipient of a jury verdict and judgment entered thereon in the amount of $5,000.00 in his action to recover for injuries he allegedly sustained in a motor vehicle collision. The determinative issue is whether he made a submissible case.

Before passing on the issues involved in this appeal we feel constrained to comment upon the manner in which this appeal is presented to us. Counsel for plaintiff failed to file a timely brief and we denied his motion to file his brief late. Defendant's counsel filed a brief which is in clear violation of Civil Rule 83.05(c), V.A.M.R. It does not contain a statement of facts but instead contains a statement of the testimony of each witness. Such a presentation is not permitted. See v. Wabash R. Co., 362 Mo. 489, 242 S.W.2d 15. The rules are easy to understand and are fair to all. We have in the past commended members of the bar for the excellence of their briefs and their diligence in complying with the rules. Barad v. Leppert Roos Fur Company, Mo.App., 442 S.W.2d 104, handed down May 20, 1969. It is therefore only fair that we also note deficiencies in compliance when such exist. Failure to comply with the requirements of timely filing or obedience to Civil Rule 83.05(c), supra, are indeed difficult to understand. However, we have determined that in the instant appeal we will not strike the brief and require the filing of a brief in compliance with the rules before considering the appeal, nor will we dismiss the appeal for failure to comply.

Defendant contends plaintiff failed to make a submissible case on the grounds plaintiff was guilty of contributory negligence as a matter of law and there was no evidence of causal connection. The facts relating to this issue, stated in the light most favorable to plaintiff, show plaintiff's theory of recovery was that defendant either failed to keep a careful lookout or failed to yield the right-of-way. Plaintiff pled he suffered injury resulting from aggravation of his prior existing condition of arthritis, spondylolisthesis, and herniated intervertebral disc. However, he submitted only as to future damages. See Harrison v. Weller, Mo.App., 423 S.W.2d 226, l.c. [2–5] 229–230, and cases there cited. Defendant's answer alleged plaintiff's contributory negligence in several respects but this issue was submitted to the jury on the ground that plaintiff knew or by the exercise of the highest degree of care could have known there was a reasonable likelihood of collision in time thereafter to have swerved or slackened his speed.

The accident out of which this action arose occurred on December 26, 1963. As a result of interrogatories it appears that in December of 1959 plaintiff fell down some stairs while employed by an oil company and injured what he described as his "lower back". An action arising out of this accident resulted in a defendant's verdict. It also appears that in 1962 while employed as a truck driver he was involved in a collision resulting in injuries to his "head and disc

between shoulders" and settled the legal action which arose out of that incident. The transcript discloses that while wearing a Thomas collar as a result of injuries received in this accident plaintiff was involved in still another in which he claimed he was not injured but another person riding with him was. The interrogatories requested the names and addresses of every person known by plaintiff or his "representatives" to have been present at the scene or to have knowledge of facts relevant and material to this accident. His answer named a Charles Foster as having been present at the scene and stated he did not know of anyone other than that.

This accident occurred at the intersection of Lackland and St. Charles Rock Roads in St. Louis County. St. Charles Rock Road travels in a generally east-west direction while Lackland Road comes in from the southwest, intersects at an angle, and dead ends at the intersection. St. Charles Rock Road is not controlled by any traffic signals. There is a major stop sign governing traffic coming from the southwest on Lackland Road. About 1000 feet back from this intersection St. Charles Rock Road has only two lanes westbound, but from that point as one comes closer to the intersection it widens and adds a third lane for traffic turning left from that road onto Lackland Road. Plaintiff was in the curb lane of St. Charles Rock Road traveling westwardly at a speed of 35 to 40 miles per hour. There is a downgrade to the intersection from the crest of a hill 200 or more feet east of the intersection and as he came over the crest of the hill plaintiff could see the whole intersection. There was traffic to his left. At a point when he was 150 feet from the intersection a large truck intending to turn left pulled into the proper lane to make that turn and blocked plaintiff's view. Plaintiff did not see defendant's automobile approaching on Lackland Road and did not see it at the stop sign or before it entered into the intersection. The first time he saw defendant he was crossing the street and the front of his automobile had crossed about one and a half lanes of the two eastbound lanes of St. Charles Rock Road. Plaintiff was then 35 to 40 feet from the intersection and defendant was 35 to 40 feet to his left. Plaintiff immediately sounded his horn, applied his brakes, and started pulling over to his right. He traveled 35 feet before he brought his automobile to a stop in the driveway of the Continental Can Company which was on the north side of St. Charles Rock Road approximately across from Lackland. Plaintiff's testimony was that the impact occurred in that driveway when defendant " * * came right into the front of my truck with his car" after plaintiff had stopped.

Plaintiff offered the testimony of the witness Murray who saw the accident. Defendant objected on the grounds that Murray's name had not been given as a witness in answer to the interrogatories. During discussion between court and counsel on the objection defendant's counsel took the position plaintiff was the one to whom the interrogatories were propounded and that he answered them as fully as he could since the first personal knowledge plaintiff had of Mr. Murray's existence was when Murray appeared at the trial. Plaintiff's counsel further stated that at the time the interrogatories were propounded he did not know of Murray's existence either and only discovered it thereafter from information supplied by another attorney who had previously been involved in the action. Plaintiff's counsel took the position that Murray's discovery was part of plaintiff's counsel's work product and that even plaintiff had no right to any part of that product. The motion was overruled. It is unnecessary to summarize this witness's testimony. It was not plaintiff's best evidence on the issues here involved.

Dr. Goldfarb who treated plaintiff for the injuries arising out of his 1959 accident also treated plaintiff for the injuries he alleges arose out of this accident. Dr. Goldfarb told plaintiff while treating him for the 1959 accident that he had spondylolisthesis and told him it was a condition

with which he was born and was going to have to live.

Defendant offered a 1961 report from Dr. Diehr of an examination made in May of that year with regard to the 1959 accident. His complaint to Dr. Diehr was as to back pain. The x-rays taken at that time revealed the spondylolisthesis which Dr. Diehr referred to as being a congenital condition. In May of that same year plaintiff was examined by Dr. Ford and his examination was introduced into evidence by defendant in the instant case. He also found the congenital spondylolisthesis at the fifth lumbar vertebra. It was Dr. Ford's opinion the man had sustained a contusion and sprain of his lower back which produced: "* * * a symptomatic aggravation of a pre-existing spondylothesis (sic) of the lumbo-sacral vertebrae."

The fall down the stairs in 1959 resulted in two trials, the judgment in the first being reversed and the cause remanded. The first trial took place on February 18, 1963, some ten months prior to the accident out of which the instant appeal arises. Plaintiff's petition in that case alleged severe strains and sprains of his back and spine, and also alleged he suffered permanent injury. Plaintiff testified that on one occasion when he bent over to pick up a bicycle he fell to the ground with back pains, and on another occasion the same thing happened when he lifted a chair. Plaintiff's testimony in that case also was that his back pained him half of every 24-hour period. The second trial was held approximately two years after the accident out of which the instant appeal arises. The petition alleged the fall in 1959 caused contusion and sprain of his lower back and aggravated his arthritic and congenital back defect requiring him to wear a back brace.

Defendant then read admissions made by plaintiff in a deposition taken in June, 1963 in the case arising out of the 1962 accident. Plaintiff described the impact of this accident, the pains up and down his back he suffered as a result of it, and stated he couldn't do any lifting or driving. As a result of injuries he received in that accident he went to Dr. Goldfarb with complaints about his head and back. He was hospitalized for two weeks and after getting out of the hospital saw Dr. Goldfarb every other day for two or three weeks and then once a week for about a month. He also saw a Dr. Gitt about a week after he got out of the hospital at the suggestion of Dr. Goldfarb. The result of his visit to Dr. Gitt was that about five days after he was out of the Firmin Desloge Hospital under the care of Dr. Goldfarb he was in the Jewish Hospital under the care of Dr. Gitt and stayed for approximately three weeks. In addition, he was sent by Drs. Goldfarb and Gitt to see a Dr. Schaerer around the 29th of April, 1962. He made three visits to this physician as a result of which he was placed in Missouri Baptist Hospital although the length of time he stayed does not appear. When the accident out of which this appeal arises occurred plaintiff was still suffering from the injuries that occurred from his 1962 accident. Dr. Goldfarb had not released him and he was administering heat treatments to plaintiff's back.

Dr. Goldfarb did not appear. By agreement of counsel portions of his reports, especially those having to do with his findings, were read to the jury. Four days after the accident here involved occurred he examined plaintiff and in his report stated: "This patient has undoubtedly received considerable trauma to his lower back which has aggravated a pre-existing congenital condition upon which there is superimposed arthritis." Plaintiff made numerous visits to Dr. Goldfarb in December of 1963 and in January and February of 1964. In a report dated February, 1966 Dr. Goldfarb stated he had not seen plaintiff for about a year and that upon this examination plaintiff's "* * * chief complaints were those of low back pain with radiation into either leg and extreme nervousness and anxiety over his general physical condition. Physical examination

showed definite limitation of motion in bending and a production of pain upon extremes of motion. There was a questionable diminished ankle jerk on the right side and a definite sacroiliac muscle spasm. The remainder of the physical examination including neurological seemed to be within normal limits. He was therefore further advised to have repeat neurological consultation in order that a complete evaluation of his low back ailment could be made and possible surgery discussed." This was the extent of plaintiff's medical testimony there being no hypothetical question propounded to the doctor to show causal connection.

■ Defendant's contention plaintiff was guilty of contributory negligence as a matter of law in failing to keep a careful lookout is based upon the evidence plaintiff could see the intersection from the crest of a hill 200 or more feet to the east and did not see the defendant. Such a contention would require us to accept as a matter of fact that to which the defendant testified but the jury refused to believe; i. e., defendant was then at the intersection. The jury was entitled to believe he was not since the plaintiff said he could see the intersection and did not see defendant. No other competent witness placed defendant at the intersection when plaintiff was at the crest of the hill. Plaintiff's best evidence was that when he was about 150 feet east of the intersection his view of the intersection was blocked by the truck which pulled into the left turn lane; that defendant pulled out from a stop sign into his path; and that plaintiff's first opportunity to see defendant after defendant reached the stop sign was when the front of defendant's automobile was across one and a half lanes of the two eastbound lanes of St. Charles Rock Road and the plaintiff was 35 feet back from the intersection proceeding at 40 miles per hour. We hold plaintiff was not guilty of contributory negligence as a matter of law.

We pass now to the issue which we find determinative of this appeal; i. e., was there evidence of causal connection? The instant appeal is not one where the issue is whether the medical testimony is sufficiently certain to have probative value; that is to say, it is not the question of a medical witness whose answer to the usual hypothetical question lacks the sufficient degree of definiteness to constitute substantial evidence the accident caused the injury. The law in this jurisdiction regarding what constitutes substantial evidence of causal connection between the collision and the injury may be found in Bertram v. Wunning, Mo.App., 385 S.W. 2d 803, 1. c. [1] 805–806, where the leading case of Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, is discussed and other cases are cited. Neither does the instant appeal belong to that line of cases where there is immediate injury coupled with a "could" answer by a medical expert. See Smith v. American Car & Foundry Division, ACF Industries, Inc., Mo.App., 368 S.W.2d 515. Neither is this a "sudden onset" case. See Sita v. Falstaff Brewing Corporation, Mo.App., 425 S.W.2d 487. Nor was it a visible injury such as a broken arm or leg or something of that nature; nor one where the injury as a matter of common knowledge follows the act such as in the case of Bell v. S. S. Kresge Co., Mo.App., 129 S.W.2d 932, where this court held that it is a matter of common knowledge that swallowing broken glass will likely cause injury. The situation here involved is more like that found in Moore v. Glasgow, Mo.App., 366 S.W.2d 475, 1. c. [9, 10] 483. In that case, although he was asked, the medical expert refused to say the accident caused or could have caused the back injury there involved. In the instant appeal so far as the transcript discloses no medical expert was even asked the question, and the transcript is as devoid of direct expert testimony on that issue as was the transcript in Moore v. Glasgow, supra.

■ The only evidence supporting the causal connection between this accident and the plaintiff's back is that contained

in Dr. Goldfarb's report of his examination conducted four days after the accident occurred. He stated plaintiff had received considerable trauma to his back which had aggravated a pre-existing congenital condition. He did not say from which accident the "considerable trauma" had come. Had there been no previous injuries this might have been sufficient considering the short lapse of time between the accident and the examination. But here plaintiff had been involved in other accidents wherein his back had been injured; had in fact brought other actions wherein he alleged substantially the same injuries to his back as he does in this case; was in fact still under the care of a physician for an earlier injury to his back when this collision occurred; and had participated in the second trial resulting from his 1959 accident, a trial taking place some two years after the collision here involved occurred, seeking recovery for substantially the same injuries. We hold such circumstances render the issue of causal connection between this collision and plaintiff's injury a highly complex matter far beyond the realm of common knowledge; an issue particularly appropriate for scientific opinion and one which the jury should not have been permitted to resolve in the absence of expert testimony. Plaintiff failed to bear his burden of establishing a causal connection between this accident and his injuries.

 Having so determined it is unnecessary to dwell at length upon the allegation of prejudicial error raised by the defendant with regard to the testimony of the witness Murray. It is sufficient to note that Murray's name was not protected from discovery because his existence was revealed as the result of plaintiff's attorney's efforts. State ex rel. Hof v. Cloyd, Mo., 394 S.W. 2d 408, l. c. 411. Neither does the fact his existence was discovered after the interrogatories had been answered permit his testimony over proper and timely objection. See Laws v. City of Wellston, Mo., 435 S.W.2d 370. What was said therein with regard to the discretion given to

the trial court in such matters will no doubt resolve any issue as to whether the answers to the interrogatories must now be amended or Murray be allowed to testify upon retrial without such amendment now that his existence is known by defendant.

The judgment is reversed and the cause remanded for new trial.

WOLFE, P. J., and JAMES H. KEET, Jr., Special Judge, concur.